Case 5:07-cv-03756-RMW   Document 4-5   Filed 07/30/2007   Page 1 of 17

Richard Alexander, Esq. (48432)
William M. Audet, Esq. (117456)
Jeffrey W. Rickard, Esq. (125180)
Ryan M. Hagan, Esq. (200850)
ALEXANDER, HAWES & AUDET, LLP
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

Attorneys for Plaintiffs and the Class

(ENDORSED)
FILED

MAR -4 03

CHIEF EXECUTIVE OFFICER/CLERK
S... ... CA
... ... CA
... ... J. Paura ...

IN THE SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

MARK DANIELS, KISTI DANIELS, SUE ) 
McELWAINE, LOUIS J. KATEN, JR., )
and FRED N. THREATT, on Behalf of )
Themselves and All Others Similarly )
Situated, )
)
                    Plaintiffs, )
)
vs. )
)
OLIN CORPORATION, a corporation; )
STANDARD FUSEE CORPORATION, a )
corporation; ORION SAFETY )
PRODUCTS, a corporation; ANNE LEE; )
YOSHIO SUEKAWA; and DOES 1 )
through 50, inclusive, )
)
                    Defendants. )
_____ )

CASE NO: CV814795

**FIRST AMENDED CLASS ACTION
COMPLAINT FOR MEDICAL
MONITORING AND REMEDIATION** AND
**INDIVIDUAL CLAIMS FOR:**

**(1) Negligence**
**(2) Nuisance**
**(3) Intentional Infliction of Emotional Distress**
**(4) Trespass**
**(5) Equitable (Injunctive and/or Declaratory)
    Relief and Damages**
**(6) Punitive Damages**

Plaintiffs, individually, and as the proposed class representatives, allege as follows:

## NATURE OF THE CASE

1.      This action is brought to remedy Defendants' unlawful conduct directed at Plaintiffs and the members of the plaintiff class. The Plaintiffs, like numerous current and previous residents and property owners at the affected "Olin Site" (as hereinafter alleged), have lived, are living, and/or own property situated on a highly toxic groundwater plume of potassium perchlorate, created as a result of forty years of manufacturing highway flares which contained

1

daniels fac wpd

potassium perchlorate. Within a year of filing this complaint, Plaintiffs discovered that their only groundwater source was contaminated with potassium perchlorate, which continues to migrate throughout the affected area. Defendants are responsible for the presence of the contamination, for allowing the toxic waste to remain in the community and fester, and for allowing potassium perchlorate to contaminate the groundwater in and around the Olin Site area and surrounding communities. Despite the fact that Defendants have known about the discharge of poisonous waste materials into the soil for some time, Plaintiffs were left to discover the presence of the contamination only after the public was informed by the media in or around January 2003.

2.     Plaintiffs have made substantial financial commitments to acquire the homes and real property located within the affected Olin Site and surrounding communities. Plaintiffs purchased, built, or had their homes built, thinking they could live peacefully and safely with their families. Plaintiffs had no knowledge that there was potassium perchlorate in the groundwater that had simply been dumped and left there by the Defendants to migrate through the soil and into the groundwater system. Plaintiffs had no knowledge that their homes were built over a chemical dump.

3.     Despite California's stringent environmental laws and standards, Defendants created a toxic waste site, left their waste in the soils and allowed it to infiltrate the groundwater system. Now, a toxic dump exists under the neighborhood homes, buildings, playgrounds, and places of business located within the affected Olin Site and surrounding communities, and it is uncertain as to the length of time which will be required for abatement of the contamination, if it can be abated at all. The Plaintiffs' inalienable right to quietly enjoy the safety and security in owning property has been destroyed by Defendants' misconduct. Plaintiffs are essentially prisoners of the Olin Site, having lost all ability to sell, market, or finance.

4.     The experts are now investigating the extent and scope of the potassium perchlorate contamination. The Defendants are involved in cleaning up the toxic waste for which they are legally responsible. The EPA has not filed a formal action against any of Defendants. Plaintiffs fear for their own safety, and for the safety of their families. Neither the short term nor the long term heath effects of Plaintiffs' exposure to potassium perchlorate through the

2

daniels fac .wpd

1   contaminated groundwater is known at this point. Plaintiffs must live each and every day with

2   this knowledge that the sanctity of their community is continuously being invaded with a

3   poisonous substance that has rendered the groundwater unusable. Plaintiffs have lost the value

4   of their homes and real property, the safety of the environment, and now are confronted with the

5   stigma that necessarily attaches to property which is located on or near a toxic waste site.

6                                   **THE PARTIES**

7          5.      Plaintiffs Mark and Kisti Daniels, husband and wife, are individuals residing in

8   San Martin, California. They, like many of their neighbors, own a home and real property which

9   has been impacted by the presence of potassium perchlorate in the groundwater system in their

10  community. Plaintiffs Mark and Kisti Daniels own the residence located at 14830 Llagas

11  Avenue, San Martin, California.

12         6.      Plaintiff Sue McElwaine, is an individual residing in San Martin, California. She,

13  like many of her neighbors, owns a home and real property which has been impacted by the

14  presence of potassium perchlorate in the groundwater system in their community. Plaintiff Sue

15  McElwaine owns the residence located at 14895 Llagas Avenue, San Martin, California.

16         7.      Plaintiff Louis J. Katen, Jr., is an individual residing in San Martin, California.

17  He, like many of his neighbors, owns a home and real property which has been impacted by the

18  presence of potassium perchlorate in the groundwater system in their community. Plaintiff

19  Louis J. Katen, Jr., owns the residence located at 14750 Columbet Avenue, San Martin,

20  California.

21         8.      Plaintiff Fred N. Threatt is an individual residing in San Martin, California. He,

22  like many of his neighbors, owns a home and real property which has been impacted by the

23  presence of potassium perchlorate in the groundwater system in their community. Plaintiff Fred

24  N. Threatt owns the residence located on Columbet Avenue, in San Martin, California.

25         9.      Defendant Olin Corporation is a multi-national corporation with annual revenues

26  in excess of $1 billion dollars, derived in part from the international sale of chemicals and

27  munitions, including Winchester ammunition through the Winchester Arms Company.

28  Defendant Olin Corporation is authorized to do business in the State of California and which, at

daniels 1st .wpd

1   all times relevant hereto, owned and operated a manufacturing facility located in the City of

2   Morgan Hill, County of Santa Clara, State of California. That as part of the ongoing business of

3   Defendant Olin Corporation, Olin was engaged in the process of manufacturing highway safety

4   flares at said facility from 1955 to approximately 1996.

5       10.   Defendant Standard Fusee Corporation was at all times relevant hereto, a wholly

6   owned subsidiary of Defendant Olin Corporation and was at all times in the course and scope of

7   such agency, employment and/or joint venture.

8       11.   Defendant Orion Safety Products purchased the automotive and marine signal

9   divisions of Olin Corporation in 1988, and is the world's largest manufacturer of emergency

10   flares.

11      12.   Defendant Anne Lee, was at all times relevant hereto, the supervisor of

12   manufacturing services for Defendants and an employee of Olin Corporation and Standard Fusee

13   Corporation, and a resident of California.

14      13.   Defendant Yoshio Suekawa, was at all times relevant hereto, the manufacturing

15   superintendent for Defendants and an employee of Olin Corporation and Standard Fusee

16   Corporation, and a resident of California.

17      14.   DOES 1 to 50 are persons whose identities are unknown to Plaintiffs at this time.

18   Defendants DOES 1 to 50 are business entities controlled by, and/or agents of and/or employees

19   of and/or affiliated with Defendants. Plaintiffs are ignorant of the true names and capacities of

20   the Defendants sued herein under the fictitious names DOES 1 to 50. They are sued herein

21   pursuant to C.C.P. § 474. When Plaintiffs become aware of the true names and capacities of the

22   Defendants sued as DOES 1 to 50, Plaintiffs will amend this Complaint to state their true names

23   and capacities.

24      15.   Each Defendant sued herein was the principal, agent, or employee of the other,

25   and was acting within the scope of such agency or employment. Each Defendant sued herein

26   was the co-conspirator of the other and was acting within the course and scope of a conspiracy

27   formed amongst each of them. Each Defendant sued herein aided and abetted the other with the

28   intent that each would be successful in their mutual endeavors. Each Defendant sued herein

*First Amended Class Action Complaint for Medical Monitoring and Remediation*

daniels fac .wpd

1    received money or property as a result of the conduct described herein without consideration

2    therefore and/or with knowledge that the money or property was obtained as a result of the

3    wrongful conduct described herein. Each entity Defendant sued herein is a shell organization,

4    and is actually the alter ego of the other Defendants sued herein.

5        16.    "OLIN," "Defendants," and/or "Defendant" as used in this Complaint refers to all

6    Defendants as well as DOES 1 to 50.

7                          **JURISDICTION AND VENUE**

8        17.    This Court has jurisdiction over this action pursuant to California Code of Civil

9    Procedure section 410.10.

10       18.    Venue is proper in this Court pursuant to Code of Civil Procedure sections 395

11   and 395.5 in that Defendants breached their duties and because liability arises in the County of

12   Santa Clara. Further the Defendants either maintain offices, transact business, have agents, are

13   found, or reside, in the County of Santa Clara. Plaintiffs are informed and believe that the

14   unlawful misconduct took place in Santa Clara County at Olin Corporation's facility in Morgan

15   Hill in the State of California. Furthermore, many of the unlawful acts herein alleged were

16   committed or perpetrated within the County of Santa Clara.

17       19.    No portion of this Complaint is brought pursuant to federal law.

18                       **CLASS ACTION ALLEGATIONS**

19       20.    This action is brought, and may properly be maintained, as a class action pursuant

20   to California Code of Civil Procedure section 382 and Civil Code section 1781. Plaintiffs bring

21   this class action on behalf of themselves and all others similarly situated, as a representative of

22   the following proposed plaintiff class, initially defined as:

23             "All persons who live, or have lived, in or around the affected
Olin Site from 1956 to the present and/or who own property in or

24             around the affected Olin Site."

25      The Class excludes claims for personal injury. Plaintiffs are members of the proposed

26   class. Excluded from the class are Defendants, any entity in which Defendants have a controlling

27   interest, any employees, officers, directors of Defendants, and any legal representatives, heirs,

28   successors, and assignees of Defendants, and any judge assigned to hear this action.

**First Amended Class Action Complaint for Medical Monitoring and Remediation**

daniels fac .wpd

1      21.   . Size of the Class.  The proposed class is so numerous that joinder of all members

2   is impractical.  Plaintiffs does not know the number of such class members, but based on his/her

3   knowledge and information alleges that thousands of persons are so situated.  Many class

4   members water wells have been tested positive for potassium perchlorate contamination, are in

5   the process of being tested, and many more are as yet unreported.  Therefore, while the exact

6   number and identities of Class Plaintiffs are unknown at this time, and can only be ascertained

7   through appropriate discovery, Plaintiffs are informed, and on the basis of that information

8   believe and allege, that the class consists of thousands of persons.

9      22.    Common Questions of Law and Fact.  Common questions of law and fact

10  predominate over any questions affecting only individual members of each class.  These common

11  legal and factual questions include, but are not limited to, the following:

12          a.      Whether Defendants adequately monitored the use, storage and disposal of

13  potassium perchlorate in the manufacture of highway safety flares.

14          b.      Whether Defendants, in violation of duty, placed class members in peril of

15  coming into contact with groundwater contaminated with potassium perchlorate.

16          c.      Whether the potassium perchlorate at issue used and distributed by

17  Defendants pose a material risk of injury to class members.

18          d.      Whether, by reason of Defendants' actions, Plaintiffs and other members

19  of the class have sustained damages through use and/or ingestion of water contaminated with

20  potassium perchlorate.

21          e.      Whether Defendants are strictly liable for any damage inflicted on class

22  members by exposure or potential exposure of class members to water contaminated with

23  potassium perchlorate.

24          The legal wrongs alleged, the right to bring this action, and the nature of the remedies

25  sought are all common to and similarly affect the legal rights of each member of the Class and

26  predominate over any question of law or fact affecting the individual Class members.

27      23.    Typicality of Claims.  The claims of the Plaintiffs are typical of the claims of the

28  class they represent.  Plaintiffs claim they have sustained injury.  These claims are typical of the

daniels fac wpd

1  claims of members of the class.

2      24.  <u>Adequate Representation.</u>  Plaintiffs will fairly and adequately represent the

3  interests of the members of the class.  Plaintiffs have retained attorneys experienced in the

4  prosecution of class actions to represent the plaintiff class herein.

5      25.  A class action is superior to other available methods for the fair and efficient

6  adjudication of this litigation since individual joinder of all members of the plaintiff class is

7  impractical.  The expense and burden of individual prosecution of this litigation is high and

8  would be unduly duplicative.  Even if any individual group of class members could themselves

9  afford individual litigation to secure relief, it would be unduly burdensome to the courts in which

10  the individual litigation would proceed.  Individual litigation magnifies the delay and expense to

11  all parties and to the court system of resolving the controversies engendered by Defendants'

12  product.  By contrast, the class action device presents far fewer management difficulties and

13  provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision

14  by a single court.

15                          **FACTUAL ALLEGATIONS**

16      26.  This action is brought to remedy Defendants' unlawful conduct directed at

17  Plaintiffs and the members of the plaintiff class.  The Plaintiffs, like numerous current and

18  previous residents and property owners at the affected Olin Site, have lived, are living, and/or

19  own real property situated above a highly toxic groundwater plume of potassium perchlorate,

20  created as a result of forty years of manufacturing highway flares which contained potassium

21  perchlorate.

22      27.  Within a year of filing this complaint, Plaintiffs discovered that their only

23  groundwater source was contaminated with potassium perchlorate, which continues to migrate

24  throughout the affected area.  Defendants are responsible for the presence of the contamination,

25  for allowing the toxic waste to remain in the community and fester, and for allowing potassium

26  perchlorate to contaminate the groundwater in and around the Olin Site area and surrounding

27  communities.  Despite the fact that Defendants have known about the discharge of poisonous

28  waste materials into the soil for some time, Plaintiffs were left to discover the presence of the

1   contamination only after the public was informed by the media in or around January 2003.

2         28.    Plaintiffs have made substantial financial commitments to acquire the homes and

3   real property located within the affected Olin Site and surrounding communities. Plaintiffs

4   purchased, built, or had their homes built, thinking they could live peacefully and safely with

5   their families. Plaintiffs had no idea that there was potassium perchlorate in the groundwater that

6   had simply been dumped and left there by the Defendants to migrate through the soil and into the

7   groundwater system. Plaintiffs had no idea that their homes were built over a chemical dump.

8         29.    Despite California's stringent environmental laws and standards, Defendants

9   created a toxic waste site, left their waste in the soils and allowed it to infiltrate the groundwater

10  system. Now, a toxic dump exists under the neighborhood homes, buildings, playgrounds, and

11  places of business located within the affected Olin Site and surrounding communities, and it is

12  uncertain as to the length of time which will be required for abatement of the contamination, if it

13  can be abated at all. Plaintiffs are essentially prisoners of the Olin Site, having lost all ability to

14  sell, market, or finance.

15        30.    The experts are now investigating the extent and scope of the potassium

16  perchlorate contamination. The Defendants are involved in cleaning up the toxic waste for which

17  they are legally responsible. The EPA has not filed a formal action against any of Defendants.

18  Plaintiffs fear for their own safety, and for the safety of their families.

19        31.    Neither the short term nor the long term heath effects of Plaintiffs' exposure to

20  potassium perchlorate through the contaminated groundwater is known at this point. Plaintiffs

21  must live each and every day with this knowledge that the sanctity of their community is

22  continuously being invaded with a poisonous substance that has rendered the groundwater

23  unusable.

24        32.    Plaintiffs have lost the value of their homes, the safety of the environment, and

25  now are confronted with the stigma that necessarily attaches to property which is located on or

26  near a toxic waste site.

27

28

**First Amended Class Action Complaint for Medical Monitoring and Remediation**

daniels fac .wpd

# FIRST CAUSE OF ACTION

## [Class Action for Medical Monitoring]

33.  Plaintiffs hereby incorporate by reference paragraphs 1 through 32 above as though fully set forth herein, and further allege:

34.  The Class members have no adequate remedy at law, rendering injunctive and other equitable relief appropriate in that damages cannot adequately compensate Class members for the injuries suffered and threatened.

35.  Through Defendants' negligent and/or intentional conduct, Plaintiffs and thousands of Class members have been exposed to water contaminated with potassium perchlorate.

36.  The practice of failing to properly dispose of waste products, including potassium perchlorate, from the manufacturing of highway flares is outrageous, dangerous and a gross violation of safety procedures, standards and techniques.  This practice created the undeniable possibility of exposure of each and every person who ingested and/or used water contaminated with potassium perchlorate to the risk of contracting various diseases and conditions.

37.  At the same time, Plaintiffs and members of the Class must be constantly vigilant against the possibility of contracting various diseases and conditions.  Further, Plaintiffs and members of the class were advised by state and local health and water officials not to drink the contaminated groundwater or use it for cooking.

38.  By the nature of and the lengthy incubation period for potential diseases, health screening tests administered at this time cannot determine whether such potential diseases or conditions will occur in the future.  Plaintiffs and members of the class therefore will require repeated, multiple periodic testing procedures in the future.

39.  Periodic screening and other medical procedures may be conducted in order to identify the existence of illness, disease or contamination.  This and all other efficacious medical monitoring and surveillance procedures should be publicized and made conveniently available to Class members at Defendants' expense.

40.  Very little is currently known about the adverse health effects from exposure to

9

daniels fac .wpd

1   potassium perchlorate, which under the circumstances here, relates to a limited population of

2   people who have been subject to high amounts of exposure for forty (40) years.

3       41.   The Defendants' negligent and/or intentional conduct has created a unique public

4   health opportunity to objectively identify adverse health conditions within the affected

5   population and to determine to what extent those health conditions vary from the general

6   California population.

7       42.   Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated,

8   requests the following Class-wide equitable relief:

9       •   That Defendants be ordered to create a medical monitoring,
            surveillance and treatment fund, under the continuing
10          jurisdiction and supervision of this Court, to monitor the
            health of Plaintiffs and Class members;

11

12      •   That Defendants be ordered to pay or reimburse Plaintiffs
            and Class members for all evaluative, monitoring,
            diagnostic, preventative, and corrective medical, surgical,
13          and incidental expenses caused by Defendants'
            wrongdoing;

14

15      •   That Defendants be ordered to pay or reimburse Plaintiffs
            and Class members for a medical survey of all persons who
            have lived in the plume area from 1955 to the present with
16          regard to thyroid and related endocrine disorders and
            complaints;

17

18      •   That Defendants be ordered to pay or reimburse Plaintiffs
            and Class members for a confidential registry open to all
            medical doctors and medical researchers, including the
19          county health authorities.

20                          **SECOND CAUSE OF ACTION**

21                          **[Class Action for Remediation]**

22      43.   Plaintiffs hereby incorporate by reference paragraphs 1 through 32 above as

23   though fully set forth herein, and further allege:

24      44.   Plaintiffs and the Class members have no adequate remedy at law, rendering

25   injunctive and other equitable relief appropriate in that damages cannot adequately compensate

26   Plaintiffs and the Class members for the injuries suffered and threatened.

27      45.   Through Defendants' negligent and/or intentional conduct, Plaintiffs and

28   thousands of Class members' properties have been exposed to groundwater contaminated with

                                          10

daniels.fac wpd

1   potassium perchlorate.

2        46.    The practice of failing to properly dispose of waste products, including potassium

3   perchlorate, from the manufacturing of highway flares is outrageous, dangerous and a gross

4   violation of safety procedures, standards and techniques. This practice created the undeniable

5   possibility of groundwater contamination from potassium perchlorate.

6        47.    Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated,

7   requests the following Class-wide equitable relief:

8       •    That Defendants be ordered to remediate the affected area
9           under the continuing jurisdiction and supervision of this Court;

10       •    That Defendants be ordered to remove the groundwater
11           contamination that resulted from Defendants' waste dumping of potassium perchlorate;

12       •    That Defendants be ordered to remediate the harm
13           Defendants' caused by installing all necessary water mains and connections to distribute fresh water to the former well
14           head connection on every Class member's property within the plume area in order to facilitate connection to the
15           Morgan Hill municipal water system for properties north of San Martin Avenue, and to the Gilroy municipal water system for properties south of San Martin Avenue;

16       •    That Defendants be ordered to pay each property owner for
17           the increased costs of purchasing water for their domestic, business, and agricultural uses, which formerly had been
18           obtained from wells at a cost of a fixed well charge.

19               **THIRD CAUSE OF ACTION**

20               **[Individual Claim for Negligence]**

21        48.    Plaintiffs hereby incorporate by reference paragraphs 1 through 19 and 26 through

22   32 above as though fully set forth herein, and further allege:

23        49.    Plaintiffs claim that Defendants were negligent.

24        50.    At all times material herein, Defendants were under a duty to conduct its business

25   of manufacturing highway flares with due and reasonable care imposed by law. Defendants were

26   at all times relevant hereto under the strictest duty of care to conduct themselves in a non-

27   negligent reasonable manner according to the reasonable product person standard.

28        51.    Defendants violated this duty of due and reasonable care and said violation was

1  despicable, wanton and reckless and calculated to cause grievous bodily harm to human beings

2  including the Plaintiffs.

3       52.   Class members have in the past and will in the future sustain damages as a result

4  of the negligence of the Defendants in their failure to contain and properly dispose of waste and

5  by-products, including potassium perchlorate, from the manufacture of highway flares.

6       53.   As a proximate result of the aforesaid carelessness and negligence of said

7  Defendants, the aforesaid conduct caused severe injury to Plaintiffs and members of the class and

8  thereby proximately caused Plaintiffs and members of the class to sustain damages and injuries

9  as herein alleged.

10                      **FOURTH CAUSE OF ACTION**

11                   **[Individual Claim for Nuisance]**

12       54.   Plaintiffs hereby incorporate by reference paragraphs 1 through 19 and 26 through

13  32 above as though fully set forth herein, and further allege:

14       55.   Plaintiffs at all times herein mentioned have the inalienable right to own, enjoy,

15  and use their residences and property without interference by other property owners such as

16  Defendants who choose to undertake ultrahazardous activities on their land, and to not have that

17  right impaired by the introduction into the groundwater system of toxic substances by

18  Defendants.

19       56.   Defendants, and each of them, have a public duty to conduct their business, and in

20  particular the mass storage and disposal of hazardous toxic substances, in a manner that does not

21  damage the public welfare and safety.

22       57.   At all times mentioned herein the conduct of said Defendants caused hazardous

23  substances and toxins, including potassium perchlorate to be discharged/disposed of into the soil

24  and groundwater supply of the communities around the subject Olin Site. The substances

25  penetrated the soil and contaminated the groundwater and have been distributed throughout the

26  community as a result of being carried through the groundwater system.

27       58.   The aforementioned discharges emanated from land upon which Defendants

28  carried on activities in conjunction with the operation of their businesses, at all times mentioned

*First Amended Class Action Complaint for Medical Monitoring and Remediation*

daniels fac .wpd

Case 5:07-cv-03756-RMW   Document 4-5   Filed 07/30/2007   Page 13 of 17

1  herein, and for forty years prior thereto.

2       59.    The aforementioned conduct of said Defendants constitutes a nuisance within the

3  meaning of §3479 of the Civil Code in that it is injurious and/or offensive to the senses of

4  Plaintiffs, and/or interferes with their comfortable enjoyment of life, and/or of their property,

5  and/or unlawfully obstructs the free use, in the customary manner, of Plaintiffs' property

6  including, but not limited to, all uses particular to residential living, recreation and work. The

7  contamination and its concomitant spoliation of the community groundwater supply is a

8  continuing and/or permanent nuisance which adversely impacts the use and/or value of Plaintiffs'

9  property.

10      60.    As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered

11  economic damages including, but not limited to, lost use of property, denial of useful and quiet

12  enjoyment of property, diminution in the fair market value of property, impairment of the

13  salability of property, and losses related to residual toxic contamination, which has caused said

14  property to be stigmatized. Plaintiffs allege that said damages are in excess of the minimum

15  jurisdictional amount of this Court to be set forth according to proof at trial.

16      61.    As a further and direct proximate result of Defendants' wrongful conduct, the

17  Plaintiffs have suffered, and will continue to suffer, pain, discomfort, anxiety, fear, worries,

18  stress, and mental and emotional distress, all to the Plaintiffs' general damage in an amount to be

19  set forth according to proof.

20      62.    Unless the nuisance is abated, Plaintiffs' property and rights of enjoyment will be

21  progressively further diminished in value.

22      63.    The nuisance is specially injurious to Plaintiffs, in that Plaintiffs are property

23  owners who have substantial equity, or have committed substantial financial resources toward the

24  purchase and/or development of their respective properties, without knowledge of the extent of

25  damage, economic and otherwise, which would result from a toxic site. Plaintiffs will be

26  adversely affected by the nuisance unless and/or until it is abated.

27      64.    The wrongful acts of Defendants were done maliciously, oppressively, and

28  fraudulently, and Plaintiffs are entitled to punitive and exemplary damages in an amount to be

---

13

**First Amended Class Action Complaint for Medical Monitoring and Remediation**

daniels fac .wpd

1   ascertained according to proof, which is appropriate to punish or set an example of Defendants.

2                              **FIFTH CAUSE OF ACTION**

3              **[Individual Claim for Intentional Infliction of Emotional Distress]**

4          65.    Plaintiffs hereby incorporate by reference paragraphs 1 through 19 and 26 through

5   32 above as though fully set forth herein, and further allege:

6          66.    Defendants' conduct in connection with the disposal of potassium perchlorate was

7   done despite Defendants' knowledge that the potassium perchlorate was present and was known

8   to be and were specifically designated as hazardous to human health.  Defendants chose to place

9   their interests in securing a profit from the manufacture of highway flares above the safety and

10  health of the affected community.

11         67.    Defendants at all relevant times knew of the existence of Plaintiffs and the

12  affected community, knew that Plaintiffs would be exposed to potassium perchlorate as a result

13  of Defendants' conduct, and knew that the discovery of these facts by Plaintiffs would

14  necessarily cause Plaintiffs to suffer injury, including severe emotional distress.  Nevertheless,

15  Defendants intentionally proceeded with their manufacture of highway flares and reckless

16  disposal of waste and by-products, including potassium perchlorate.

17         68.    Defendants' conduct in connection with the disposal of potassium perchlorate was

18  undertaken with reckless disregard of the Plaintiffs and the affected community.

19         69.    As a direct and proximate result of Defendants' conduct alleged herein, Plaintiffs

20  suffer severe and extreme emotional distress.

21         70.    As a further and direct proximate result of said wrongful conduct, the Plaintiffs

22  have suffered, and will continue to suffer pain, discomfort, anxiety, fear, worries, stress, and

23  mental and emotional distress, all to the Plaintiffs' general damage in an amount to be set forth

24  according to proof at trial.

25         71.    The wrongful acts of Defendants were done maliciously, oppressively, and

26  fraudulently, and Plaintiffs are entitled to punitive and exemplary damages in an amount to be

27  ascertained according to proof, which is appropriate to punish or set an example of Defendants.

28

---

                                      14

daniels fac .wpd

## SIXTH CAUSE OF ACTION

### [Individual Claim for Trespass]

72.     Plaintiffs hereby incorporate by reference paragraphs 1 through 19 and 26 through 32 above as though fully set forth herein, and further allege:

73.     Plaintiffs at all times herein mentioned, had interest and title in their properties and the right to quiet and useful enjoyment thereof, as well as their surrounding living environment, including the groundwater.

74.     As a direct and proximate result of the intentional, reckless, or negligent conduct of Defendants, and each of them, as alleged herein, the presence of potassium perchlorate has infiltrated the soil, which in turn contaminated the groundwater and has irreparably damaged Plaintiffs' interests in property and water.

75.     As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered economic damages including, but not limited to, lost use of property, denial of useful and quiet enjoyment of property, diminution in the fair market value of property, impairment of the salability of property, and losses related to residual toxic contamination, which has caused said property to be stigmatized.  Plaintiffs allege that said damages are in excess of the minimum jurisdictional amount of this Court to be set forth according to proof at trial.

76.     As a further and direct proximate result of said wrongful conduct, the Plaintiffs have suffered, and will continue to suffer, pain, discomfort, anxiety, fear, worries, stress, and mental and emotional distress, all to the Plaintiffs' general damage in an amount to be set forth according to proof at trial.

77.     As a direct and proximate result of Defendants' conduct alleged herein, Plaintiffs suffer severe and extreme emotional distress.

78.     Defendants' acts and omissions which constitute trespass as described herein were committed with malice, fraud and oppression thereby entitling Plaintiffs to exemplary or punitive damages.

First Amended Class Action Complaint for Medical Monitoring and Remediation

## SEVENTH CAUSE OF ACTION

### [Individual Claim for Equitable (Injunctive and/or Declaratory) Relief and Damages]

79. Plaintiffs hereby incorporate by reference paragraphs 1 through 19 and 26 through 32 above as though fully set forth herein, and further allege:

80. The Plaintiffs have no adequate remedy at law, rendering injunctive and other equitable relief appropriate in that damages cannot adequately compensate Plaintiffs for the injuries suffered and threatened.

81. Accordingly, Plaintiffs request the following equitable relief:

a. That a judicial determination and declaration be made of the rights of Plaintiffs and the corresponding responsibilities of Defendants; and

b. That the Court create and administer a medical monitoring fund, under the continuing jurisdiction and supervision of the Court, to monitor the health of Plaintiffs. Plaintiffs are entitled to a "medical monitoring" fund because, as a result of the harmful exposure to water contaminated with potassium perchlorate, they are at risk for related physical, mental and emotional harm and are demonstrably at increased risk for various diseases and conditions. The need for ongoing monitoring is a reasonably certain consequence of Plaintiffs' exposure to various diseases and conditions, and the recommended monitoring is reasonable. This program should consist only of periodic checks for Plaintiffs to determine whether an illness exits. This program does not include treatment of such illnesses.

82. Plaintiffs are entitled to compensation for medical damages and other economic losses as provided under the Laws of the State of California.

## EIGHTH CAUSE OF ACTION

### [Individual Claim for Punitive Damages]

83. Plaintiffs hereby incorporate by reference paragraphs 1 through 19 and 26 through 32 above as though fully set forth herein, and further allege:

84. Defendants' actions were oppressive, malicious, grossly negligent, willful and wanton and exhibit a callous disregard of the Plaintiffs' rights and health interests.

WHEREFORE, Representative Plaintiffs and the class pray for relief as follows:

First Amended Class Action Complaint for Medical Monitoring and Remediation

daniels fac wpd

1.    That this action be certified as a class action and that the Plaintiffs be designated the class representatives;

2.    That judgment be entered in favor of the Plaintiffs and the class;

3.    Relief in the form of an order and decree establishing a fund created by Defendants imposing a constructive trust upon the real and personal property owned by the Defendants in an amount sufficient to provide for costs of monitoring for Class members and remediation;

4.    Attorney's fees, expenses and costs of this suit; and

5.    For damages, according to proof, including general damages, medical and related expenses, and exemplary and punitive damages

6.    For interest, including pre-judgment and post-judgement interest, as permitted by law; and

7.    Such additional relief as this Court deems necessary, just and proper.

Dated: March  3 , 2003                    ALEXANDER, HAWES & AUDET, LLP

By:  *Richard Alexander*
      Richard Alexander, Esq.

      William M. Audet, Esq.
      Jeffrey W. Rickard, Esq.
      Ryan M. Hagan, Esq.
      ALEXANDER, HAWES & AUDET, LLP
      152 North Third Street, Suite 600
      San Jose, CA 95112
      Telephone: 408.289.1776
      Facsimile: 408.287.1776

      Attorneys for Plaintiffs and the Class

First Amended Class Action Complaint for Medical Monitoring and Remediation

durich fac wpd