Case 5:07-cv-03756-RMW Document 4-11 Filed 07/30/2007 Page 1 of 19

ORIGINAL

BINGHAM MCCUTCHEN LLP
CHRISTOPHER P. BERKA (SBN 94911)
chris.berka@bingham.com
GREG A. CHRISTIANSON (SBN 181231)
greg.christianson@bingham.com
HOLLY PEARSON (SBN 226523)
holly.pearson@bingham.com
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone: 650.849.4400
Facsimile: 650.849.4800

FILED
2007 JUL 20 P 3:39
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

#99
Fees Pd
SI

ADR
E-FILING
JW
RS

Attorneys for Plaintiff
SANTA CLARA VALLEY WATER DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT,<br>Plaintiff,<br>v.<br>OLIN CORPORATION; and DOES 1-10, inclusive,<br>Defendants. | C 07 No. 03756<br>COMPLAINT<br>(JURY TRIAL DEMANDED) |

Plaintiff Santa Clara Valley Water District (the "District") alleges as follows:

## PREAMBLE

1. For more than thirty years, Defendant Olin Corporation ("Olin") dumped hazardous waste on and into the soil at its industrial facility at 425 Tennant Avenue in Morgan Hill, California ("Site"). While this waste contained hazardous substances including perchlorate and nitrate, Olin did nothing substantial to contain the contaminants. Instead, Olin poured hazardous substances and waste directly into unlined pits and open sumps at the Site, allowing them to migrate into the groundwater.

2. Olin knew that its operations at the Site were likely to contaminate the groundwater, yet it failed to investigate or take meaningful steps to protect the public from the consequences of its conduct.

3. Olin's Site is located within a critical groundwater subbasin that provides nearly all the drinking water for residents and businesses in the area. More than 3,000 wells draw water from this groundwater subbasin.

4. Eventually, a potential purchaser performed environmental testing at the Site. The testing showed that Olin's careless material handling and disposal practices had contaminated groundwater with high levels of perchlorate. Later testing revealed a massive plume of perchlorate contamination, stretching at least ten miles through southern Santa Clara County and contaminating hundreds of drinking water wells.

5. Perchlorate is a hazardous substance. If ingested in large enough quantities, it can impair the function of the thyroid gland. Pregnant woman and their fetuses, infants and the elderly are particularly at risk of adverse health effects from exposure to perchlorate.

6. While the investigation showed that Olin's contamination had migrated off-site, Olin initially failed to respond in a timely, reasonable manner to the damage it had caused and the continued threat posed to drinking water in the area. In the critical early days following the discovery of off-site contamination, Olin delayed in assessing the extent of its groundwater plume, failed to provide clean drinking water to many of the affected homes and businesses, neglected to sample nearby wells, and failed to provide sufficient information to the concerned public as to the steps necessary to protect against the ill effects of the contamination.

7. The District was established by the California State Legislature to protect and safeguard the groundwater and other water resources of Santa Clara County. Under its statutory mandate, the District is authorized to take actions

necessary to prevent interference with the water supply of Santa Clara County.

8. Because Olin initially failed to act in a timely, reasonable manner, it fell to the District to undertake efforts to respond to the environmental harms caused by Olin. Among other things, the District sampled more than one thousand (1,000) water wells and provided replacement bottled water to more than one thousand five hundred (1,500) residents and businesses whose wells were threatened or affected by the environmental conditions caused by Olin. The District has incurred more than $4 million in costs to date as a result of the perchlorate contamination caused by Olin. The District has asked Olin to reimburse the District for the costs it has incurred.

9. To date, Olin has failed and refused to reimburse the District for a substantial portion of the District's costs incurred as a result of Olin's contamination. The District brings this action to, among other things, recover costs incurred to respond to the environmental conditions caused by Olin.

**JURISDICTION AND VENUE**

10. The Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1367(a), and Section 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Section 9613(b). In addition, the Court has jurisdiction pursuant to 28 U.S.C. Section 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States. The District is a governmental agency organized and existing under the laws of the State of California. Olin is a corporation that is organized and existing under the laws of the State of Virginia and has its principal place of business in the State of Missouri.

11. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) and 42 U.S.C. Sections 9607 and 9613(b) because the Site, Olin's release of hazardous substances and wastes, and Olin's plume of perchlorate contamination are located within the Northern District of California and because

the acts that gave rise to the District's claims occurred in the Northern District of California.

INTRADISTRICT ASSIGNMENT

12. Assignment to the San Jose Division of this Court is appropriate under Civil L.R. 3-2 in that the action arose in the County of Santa Clara because the Site, Olin's release of hazardous substances and wastes, and Olin's plume of perchlorate contamination are located within the County of Santa Clara.

PLAINTIFF

13. The District is a governmental agency organized and existing under the laws of the State of California.

14. The District was established by the California State Legislature as the primary water resources agency in Santa Clara County. Under its statutory mandate, the District acts as a groundwater management agency. The District also acts as steward of the streams, creeks, reservoirs, and underground aquifers of Santa Clara County, managing and protecting these resources for the beneficial use of the public. *See* Cal. Water Code, Appendix, Chapter 60 ("District Act"). The District also functions as a flood protection agency and ensures an adequate supply of clean and safe water for homes and businesses throughout the County.

15. The District has incurred, and continues to incur, costs as a result of contamination caused by Olin's release of hazardous substances and wastes at and in the vicinity of the Site.

DEFENDANTS

16. The District is informed and believes and thereon alleges that Olin is a corporation that is organized and existing under the laws of the State of Virginia and is doing business in the State of California, including within the Northern District of California. Olin's principal place of business is located in the

State of Missouri. Olin has owned the Site at all times since at least as early as 1956.

17. Does 1-10 are as yet unidentified entities and individuals who are potentially liable for the releases or threatened releases of hazardous substances and other injurious conditions at and emanating from the Site. The true names or capacities of the defendants sued under the fictitious names Does 1-10 are currently unknown to the District. The District will amend this Complaint to add the true names and capacities of these parties when they become known to the District.

## GENERAL ALLEGATIONS

18. The District is informed and believes and thereon alleges that from approximately 1956 to 1988, Olin operated a signal flare manufacturing facility at the Site. After 1988, Olin leased its facility to another company, which continued the operation at the Site until 1996. Olin owned the Site at all times during the period of operation and still owns the Site today.

19. The District is informed and believes and thereon alleges that Olin used and generated various hazardous substances at the Site including but not limited to the oxidizing compound known as perchlorate. Perchlorate was delivered to the facility in the form of potassium perchlorate, which was used in making both the ignition material and combustible candle of the flares. In its manufacturing process, Olin generated various types of waste, including unused and excess chemical mixtures known as "prime mix" and "fire mix." Both of these chemical mixtures contained hazardous substances including perchlorate.

20. The District is informed and believes and thereon alleges that Olin dumped this perchlorate-laden waste into unlined disposal pits on the Site. These wastes were not placed in containers, nor did Olin make any reasonable attempt to seal the unlined pits to prevent contaminants from migrating into the groundwater.

21. The District is informed and believes and thereon alleges that Olin also poured contaminated wastewater directly into the soil as well as into open air sumps at the Site. This wastewater included residue generated in washing equipment such as the bowls used for mixing the ignitable material. Like its disposal pits, Olin's wastewater sumps were unlined. All material that did not evaporate ultimately soaked into the soil at the Site.

22. The District is informed and believes and thereon alleges that Olin burned waste containing perchlorate in open trenches and in an incinerator, and that said burning was incomplete, causing airborne perchlorate to spread and settle over a large area.

23. The District is informed and believes and thereon alleges that Olin caused several explosions of perchlorate-containing wastes at its Morgan Hill property, causing perchlorate to be scattered about a radius from the locus of the blast.

24. The District is informed and believes and thereon alleges that Olin knew or should have known that its disposal of hazardous substances and waste would contaminate the groundwater, yet it failed to investigate or take meaningful steps to protect the public from the contamination it caused.

25. The District is informed and believes and thereon alleges that a potential purchaser of the Site ultimately discovered perchlorate in the on-site groundwater. Additional testing revealed perchlorate contamination at multiple locations throughout the Site. Perchlorate was detected at levels as high as 14,000 parts per billion in the soil and 2,600 ppb in the on-site groundwater.

26. The District is informed and believes and thereon alleges that subsequent testing revealed that Olin's perchlorate contamination had migrated off-site through the groundwater, eventually spreading throughout the entire region. The affected area is located in the Llagas Subbasin, a groundwater basin that stretches approximately fifteen miles from Cochrane Road near Morgan Hill to the

southern border of Santa Clara County. Consistent with the prevailing groundwater flow direction in the Subbasin, the majority of Olin's plume of contamination has spread south-southeast from the Property. While Olin has not yet defined the lateral and vertical extent of its contamination, the massive plume now stretches at least ten miles from Morgan Hill to Gilroy, encompassing most of the Llagas Subbasin.

27. Despite results clearly showing that Olin's contamination had migrated off-site, Olin initially failed to respond in a timely, reasonable manner to the damage and threat it caused to the environment, including area drinking water. Olin delayed in assessing the extent of its groundwater plume, initially declined to provide clean drinking water to homes and businesses affected by its contamination, neglected to sample nearby wells, and failed to provide sufficient information to the concerned public as to the steps it should take to protect itself.

28. Under the District Act, the District is authorized to take various actions as necessary to store and recharge groundwater and prevent interference with, waste to, or diminution of the County's water supply.

29. Since Olin initially failed to act in a timely, reasonable manner to respond to its contamination, it fell to the District to undertake efforts to respond. Among other things, the District sampled hundreds of water wells and provided bottled water to more than one thousand five hundred residents and businesses affected by the contamination caused by Olin's conduct. To date, the District has incurred more than $4 million in costs as a result of Olin's contamination.

30. To date, despite repeated requests, Olin has failed and refused to reimburse the District for a substantial portion of the costs the District has incurred as a result of Olin's contamination.

31. Olin's conduct was malicious, oppressive and/or fraudulent.

**FIRST CLAIM FOR RELIEF**

**(Response Cost Recovery Under CERCLA Section 107(a), 42 U.S.C. Section 9607(a))**

32. Paragraphs 1-31 are incorporated herein by reference.

33. Section 107(a) of CERCLA, 42 U.S.C. Section 9607(a), provides in pertinent part:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances,

* * * *

. . . shall be liable for--

* * * *

(4)

(A) all costs of removal or remedial action incurred by the United States Government or a State or

an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

34. Olin is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. Section 9601(21).

35. The Site is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. Section 9601(9).

36. The District is informed and believes and thereon alleges that Olin's waste deposited at the Site has caused a "release" and/or "releases" within the meaning of CERCLA Section 101(22), 42 U.S.C. Section 9601(22). The release or releases have consisted of "hazardous substances" within the meaning of CERCLA Section 101(14), 42 U.S.C. Section 9601(14), including, but not limited to, perchlorate and nitrate.

37. The District is informed and believes and thereon alleges that Olin owns the Site, owned and operated the Site at the time of disposal of the hazardous substances, and arranged for the disposal of hazardous substances at the Site.

38. The District constitutes a "State" within the meaning of CERCLA Section 107(a)(4)(A), 42 U.S.C. Section 9607(a)(4)(A).

39. As a result of Olin's release of hazardous substances at the Site, the District has incurred costs, including necessary costs, of response pursuant to CERCLA Section 107(a), 42 U.S.C. Section 9607(a). The costs have been consistent with, and not inconsistent with, the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.

40. The District is entitled under CERCLA Section 107(a), 42 U.S.C. Section 9607(a), to recover from Olin the costs that the District has incurred

as a result of the release and threatened release of hazardous substances at the Site, plus interest on such amounts. Such costs include, but are not limited to, costs incurred by the District in responding to the groundwater contamination and all attorneys' fees and other costs incurred by the District in enforcing Olin's obligations and requirements under applicable laws and regulations.

41. At or about the time of filing this Complaint, the District provided a copy of this Complaint to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency pursuant to CERCLA Section 113(l), 42 U.S.C. Section 9613(l).

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief Under CERCLA Section 113(g)(2), 42 U.S.C. Section 9613(g)(2))**

42. Paragraphs 1-41 are incorporated herein by reference.

43. CERCLA Section 113(g)(2), 42 U.S.C. Section 9613(g)(2), provides in pertinent part:

> In any action described in this subsection the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

44. The District is entitled to a declaratory judgment pursuant to CERCLA Section 113(g)(2), 42 U.S.C. Section 9613(g)(2), binding as to any subsequent action or actions. Such judgment shall declare that Olin is liable to the District for any costs, damages and liability that the District may incur as a result of the release or threatened release of hazardous substances at and emanating from the Site.

## THIRD CLAIM FOR RELIEF

**(Reimbursement Under Cal. Water Code Section 13304)**

45. Paragraphs 1-44 are incorporated herein by reference.

46. California Water Code Section 13304 provides in pertinent part:

> (a) Any person who . . . has caused or permitted, causes or permits, or threatens to cause or permit any waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance, shall upon order of the regional board, clean up the waste or abate the effects of the waste, or, in the case of threatened pollution or nuisance, take other necessary remedial action, including, but not limited to, overseeing cleanup and abatement efforts.
>
> * * * *
>
> (c)(1) If the waste is cleaned up or the effects of the waste are abated, or, in the case of threatened pollution or nuisance, other necessary remedial action is taken by any governmental agency, the person or persons who discharged the waste, discharges the waste, or threatened to cause or permit the discharge of the waste within the meaning of subdivision (a), are liable to that governmental agency to the extent of the reasonable costs actually incurred in cleaning up the waste, abating the effects of the waste,

supervising cleanup or abatement activities, or taking other remedial action.

47. The District has incurred costs in response to Olin's actual and threatened discharge and deposition of waste at the Site in accordance with Section 13304 of the California Water Code.

48. The District is informed and believes and thereon alleges that Olin is a liable party for conditions at the Site within the meaning of Section 13304(c)(1) of the California Water Code.

49. The District is entitled to reimbursement under Section 13304(c)(1) of the California Water Code from Olin for all reasonable costs incurred by the District in cleaning up the waste, abating the effects of the waste, supervising cleanup or abatement activities, or taking other remedial action, plus interest.

50. The District also is entitled to punitive and exemplary damages from Olin.

## FOURTH CLAIM FOR RELIEF

**(Indemnity Under Cal. Health And Safety Code Section 25363(e))**

51. Paragraphs 1-50 are incorporated herein by reference.

52. California Health and Safety Code Section 25363(e) provides in pertinent part:

> Any person who has incurred removal or remedial action costs in accordance with this chapter or the federal act [CERCLA] may seek contribution or indemnity from any person who is liable pursuant to this chapter . . . In resolving claims for contribution or indemnity, the court may allocate costs among liable parties using those equitable factors which are appropriate.

53. The District is informed and believes and thereon alleges that Olin has released and continues to release "hazardous substances" at and in the vicinity of the Site within the meaning of Section 25316 of the California Health and Safety Code, including, but not limited to, perchlorate and nitrate.

54. The District has incurred removal and remedial action costs in response to Olin's release of hazardous substance at the Site within the meaning of Section 25363(e) of the California Health and Safety Code.

55. The District is informed and believes and thereon alleges that Olin is a liable party for the release of hazardous substances at the Site within the meaning of Sections 25323.5 and 25363(e) of the California Health and Safety Code.

56. The District is entitled to indemnity under Section 25363(e) of the California Health and Safety Code from Olin with respect to removal and remedial action costs incurred by the District, plus interest.

57. At or about the time of filing this Complaint, the District provided written notice to the Director of the California Department of Toxic Substances Control pursuant to Section 25363(e) of the California Health and Safety Code.

**FIFTH CLAIM FOR RELIEF**

**(Public Nuisance)**

58. Paragraphs 1-57 are incorporated herein by reference.

59. The District is informed and believes and thereon alleges that Olin has created a condition that is injurious to health, indecent and offensive to the senses, and an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life and property within the meaning of California Civil Code Section 3479.

60. The District is informed and believes and thereon alleges that the nuisance created by Olin constitutes a public nuisance within the meaning of

California Civil Code Section 3480, in that hazardous substances (including, without limitation, perchlorate and nitrate) have migrated off-site and continue to pollute the soil and groundwater in the community surrounding the Site, thereby affecting a considerable number of persons.

61. The District is informed and believes and thereon alleges that, as a direct and proximate result of the public nuisance created by Olin, the District has incurred costs of abatement, including costs of response, removal and remedial action, thereby suffering injuries different in kind from those suffered by the general public.

62. The District has been injured in the amount of its costs of abatement incurred in response to the releases and threatened releases at the Site, and continues to be injured as long as the nuisance is not abated.

63. The District is entitled to recovery from Olin in the amount of its costs of abatement, and other damages, plus interest.

64. The District also is entitled to recovery of punitive and exemplary damages from Olin.

## SIXTH CLAIM FOR RELIEF

### (Common Law Restitution for Unjust Enrichment)

65. Paragraphs 1-64 are incorporated herein by reference.

66. The District is informed and believes and thereon alleges that Olin had a duty to respond to and abate the effects of the contamination it caused.

67. In incurring costs to respond to Olin's contamination, the District has conferred a benefit on Olin because Olin otherwise would have been required to incur such costs itself.

68. The District is informed and believes and thereon alleges that Olin has been unjustly enriched at the expense of the District in receiving these benefits.

69. The District is entitled to restitution from Olin of all costs incurred by the District as a result of Olin's contamination, plus interest.

70. The District also is entitled to punitive and exemplary damages from Olin.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Equitable Indemnity)

71. Paragraphs 1-70 are incorporated herein by reference.

72. By using, storing, disposing of, and arranging for the disposal of pollutants and contaminants at and in the vicinity of the Site, Olin created conditions that were in violation of the law and applicable rules and regulations. Olin's improper and careless management of pollutants and contaminants created a duty to abate the hazardous conditions created by such conduct. Olin has failed to abate fully said conditions.

73. The District has incurred costs in responding to the hazardous conditions existing at the Site. In so doing, the District has discharged and continues to discharge a legal liability justly attributable to Olin. All costs incurred or to be incurred by the District in remedying and abating the conditions created by Olin identified above were and will be incurred because Olin has refused to recognize its legal and equitable obligations. In addition, due to the acts and omissions of Olin, as alleged herein, the District has been required to defend itself in numerous lawsuits in which the District has been named as defendant. Olin is obligated under principles of equitable indemnity to reimburse the District for all defense costs and costs of settlement or judgment in all such actions.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Relief Under 28 U.S.C. Sections 2201 and 2202)

74. Paragraphs 1-73 are incorporated herein by reference.

75. 28 U.S.C. Section 2201 provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

76. An actual controversy exists regarding Olin's liability to the District for costs that the District has incurred and may in the future incur as a result of releases and/or threatened releases of hazardous substances and wastes at and emanating from the Site.

77. A declaratory judgment is necessary for the District to establish its rights against Olin with respect to such costs.

78. With respect to costs, including costs of response, removal, remedial action, and abatement, incurred by the District as a result of the releases and/or threatened releases at and emanating from the Site, the facts giving rise to the controversies for which the District seeks declaratory relief have already occurred, and the incurrence by the District of future costs is neither unlikely, remote, nor speculative.

79. 28 U.S.C. Section 2202 provides:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

80. The District requests that this Court, after entering the declaratory judgment prayed for herein, retain jurisdiction over this action to grant

the District such further relief against Olin as is necessary and proper to effectuate the Court's declaration.

## NINTH CLAIM FOR RELIEF

**(Declaratory Relief Under California Law)**

81. Paragraphs 1-80 are incorporated herein by reference.

82. A dispute has arisen and an actual controversy exists between the District and Olin because, among other things, the District contends that Olin is obligated to indemnify the District and reimburse the District for all response costs as set forth herein, including but not limited to environmental investigation and remediation costs that have been and will be incurred by the District to respond to the contamination resulting from the releases caused by Olin. The District is informed and believes, and on that basis alleges, that Olin denies all such obligations.

83. The District requests a judicial determination pursuant to California Code of Civil Procedure § 1060 of the District's right to total or partial reimbursement and indemnification from Olin for all costs incurred by the District as a result of releases of chemical substances as alleged herein.

**WHEREFORE,** the District prays for judgment against Olin as follows:

1. For reimbursement and indemnification with respect to all costs of response, removal, remedial action and abatement incurred by the District as a result of the releases and/or threatened releases of hazardous substances and wastes at and emanating from the Site;

2. For damages resulting from the conditions created by Olin;

3. For the District's costs and attorneys' fees incurred in this action;

4. For punitive and exemplary damages;

5. For pre-judgment interest at the maximum rate and amount allowed by law;

6. For declaratory judgment that Olin is liable to the District for all future costs and damages, including costs of response, removal, remedial action, and abatement, incurred by the District as a result of the releases and/or threatened releases of hazardous substances and wastes at and emanating from the Site; and

7. For such other and further relief as the Court may deem appropriate.

DATED: July 20, 2007

BINGHAM MCCUTCHEN LLP

By: [signature]
HOLLY L. PEARSON
Attorneys for Plaintiff
SANTA CLARA VALLEY WATER DISTRICT

DEMAND FOR JURY TRIAL

Plaintiff Santa Clara Valley Water District hereby requests a trial by jury on each Claim for Relief alleged in the Complaint.

DATED: July 20, 2007

BINGHAM MCCUTCHEN LLP

By: [signature]
HOLLY L. PEARSON
Attorneys for Plaintiff
SANTA CLARA VALLEY WATER DISTRICT