BINGHAM MCCUTCHEN LLP
CHRISTOPHER P. BERKA (SBN 94911)
chris.berka@bingham.com
GREG A. CHRISTIANSON (SBN 181231)
greg.christianson@bingham.com
SAMANTHA REARDON (SBN 240068)
samantha.reardon@bingham.com
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone: 650.849.4400
Facsimile: 650.849.4800

Attorneys for Plaintiff
SANTA CLARA VALLEY WATER DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT, | No. C07 03756 RMW |
| Plaintiff, | FIRST AMENDED COMPLAINT (JURY TRIAL DEMANDED) |
| v. | |
| OLIN CORPORATION; and DOES 1-10, inclusive, | |
| Defendants. | |

Plaintiff Santa Clara Valley Water District (the "District") alleges as follows:

## **PREAMBLE**

1.      For more than thirty years, Defendant Olin Corporation ("Olin") dumped hazardous waste on and into the soil at its industrial facility at 425 Tennant Avenue in Morgan Hill, California ("Site"). While this waste contained hazardous substances including perchlorate and nitrate, Olin did nothing substantial to contain the contaminants. Instead, Olin poured hazardous substances and waste directly into unlined pits and open sumps at the Site, allowing them to migrate into the groundwater.

1    2.    Olin knew that its operations at the Site were likely to

2  contaminate the groundwater, yet it failed to investigate or take meaningful steps to

3  protect the public from the consequences of its conduct.

4    3.    Olin's Site is located within a critical groundwater subbasin that

5  provides nearly all the drinking water for residents and businesses in the area.

6  More than 3,000 wells draw water from this groundwater subbasin.

7    4.    Eventually, a potential purchaser performed environmental

8  testing at the Site.  The testing showed that Olin's careless material handling and

9  disposal practices had contaminated groundwater with high levels of perchlorate.

10  Later testing revealed a massive plume of perchlorate contamination, stretching at

11  least ten miles through southern Santa Clara County and contaminating hundreds

12  of drinking water wells.

13    5.    Perchlorate is a hazardous substance.  If ingested in large

14  enough quantities, it can impair the function of the thyroid gland.  Pregnant woman

15  and their fetuses, infants and the elderly are particularly at risk of adverse health

16  effects from exposure to perchlorate.

17    6.    While the investigation showed that Olin's contamination had

18  migrated off-site, Olin initially failed to respond in a timely, reasonable manner to

19  the damage it had caused and the continued threat posed to drinking water in the

20  area.  In the critical early days following the discovery of off-site contamination,

21  Olin delayed in assessing the extent of its groundwater plume, failed to provide

22  clean drinking water to many of the affected homes and businesses, neglected to

23  sample nearby wells, and failed to provide sufficient information to the concerned

24  public as to the steps necessary to protect against the ill effects of the

25  contamination.

26    7.    The District was established by the California State Legislature

27  to protect and safeguard the groundwater and other water resources of Santa Clara

28  County.  Under its statutory mandate, the District is authorized to take actions

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    necessary to prevent interference with the water supply of Santa Clara County.

2    8.    Because Olin initially failed to act in a timely, reasonable

3    manner, it fell to the District to undertake efforts to respond to the environmental

4    harms caused by Olin.  Among other things, the District sampled more than one

5    thousand (1,000) water wells and provided replacement bottled water to more than

6    one thousand five hundred (1,500) residents and businesses whose wells were

7    threatened or affected by the environmental conditions caused by Olin.  The

8    District has incurred more than $4 million in costs to date as a result of the

9    perchlorate contamination caused by Olin.  The District has asked Olin to

10   reimburse the District for the costs it has incurred.

11   9.    To date, Olin has failed and refused to reimburse the District for

12   a substantial portion of the District's costs incurred as a result of Olin's

13   contamination.  The District brings this action to, among other things, recover costs

14   incurred to respond to the environmental conditions caused by Olin.

15                          **JURISDICTION AND VENUE**

16   10.    The Court has jurisdiction pursuant to 28 U.S.C. Sections 1331

17   and 1367(a), and Section 113(b) of the Comprehensive Environmental Response,

18   Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Section 9613(b).  In

19   addition, the Court has jurisdiction pursuant to 28 U.S.C. Section 1332 because the

20   matter in controversy exceeds the sum of $75,000, exclusive of interest and costs,

21   and is between citizens of different States.  The District is a governmental agency

22   organized and existing under the laws of the State of California.  Olin is a

23   corporation that is organized and existing under the laws of the State of Virginia

24   and has its principal place of business in the State of Missouri.

25   11.    Venue is proper in this District pursuant to 28 U.S.C. Section

26   1391(b) and 42 U.S.C. Sections 9607 and 9613(b) because the Site, Olin's release

27   of hazardous substances and wastes, and Olin's plume of perchlorate

28   contamination are located within the Northern District of California and because

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  the acts that gave rise to the District's claims occurred in the Northern District of

2  California.

3  **INTRADISTRICT ASSIGNMENT**

4        12.    Assignment to the San Jose Division of this Court is

5  appropriate under Civil L.R. 3-2 in that the action arose in the County of Santa

6  Clara because the Site, Olin's release of hazardous substances and wastes, and

7  Olin's plume of perchlorate contamination are located within the County of Santa

8  Clara.

9  **PLAINTIFF**

10        13.    The District is a governmental agency organized and existing

11  under the laws of the State of California.

12        14.    The District was established by the California State Legislature

13  as the primary water resources agency in Santa Clara County.  Under its statutory

14  mandate, the District acts as a groundwater management agency.  The District also

15  acts as steward of the streams, creeks, reservoirs, and underground aquifers of

16  Santa Clara County, managing and protecting these resources for the beneficial use

17  of the public.  *See* Cal. Water Code, Appendix, Chapter 60 ("District Act").  The

18  District also functions as a flood protection agency and ensures an adequate supply

19  of clean and safe water for homes and businesses throughout the County.

20        15.    The District has incurred, and continues to incur, costs as a

21  result of contamination caused by Olin's release of hazardous substances and

22  wastes at and in the vicinity of the Site.

23  **DEFENDANTS**

24        16.    The District is informed and believes and thereon alleges that

25  Olin is a corporation that is organized and existing under the laws of the State of

26  Virginia and is doing business in the State of California, including within the

27  Northern District of California.  Olin's principal place of business is located in the

28

A/72251984.4                                      4                          Case No. C07 03756 RMW

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1   State of Missouri.  Olin has owned the Site at all times since at least as early as

2   1956.

3           17.    Does 1-10 are as yet unidentified entities and individuals who

4   are potentially liable for the releases or threatened releases of hazardous substances

5   and other injurious conditions at and emanating from the Site.  The true names or

6   capacities of the defendants sued under the fictitious names Does 1-10 are

7   currently unknown to the District.  The District will amend this Complaint to add

8   the true names and capacities of these parties when they become known to the

9   District.

10                          **GENERAL ALLEGATIONS**

11          18.    The District is informed and believes and thereon alleges that

12  from approximately 1956 to 1988, Olin operated a signal flare manufacturing

13  facility at the Site.  After 1988, Olin leased its facility to another company, which

14  continued the operation at the Site until 1996.  Olin owned the Site at all times

15  during the period of operation and still owns the Site today.

16          19.    The District is informed and believes and thereon alleges that

17  Olin used and generated various hazardous substances at the Site including but not

18  limited to the oxidizing compound known as perchlorate.  Perchlorate was

19  delivered to the facility in the form of potassium perchlorate, which was used in

20  making both the ignition material and combustible candle of the flares.  In its

21  manufacturing process, Olin generated various types of waste, including unused

22  and excess chemical mixtures known as "prime mix" and "fire mix."  Both of these

23  chemical mixtures contained hazardous substances including perchlorate.

24          20.    The District is informed and believes and thereon alleges that

25  Olin dumped this perchlorate-laden waste into unlined disposal pits on the Site.

26  These wastes were not placed in containers, nor did Olin make any reasonable

27  attempt to seal the unlined pits to prevent contaminants from migrating into the

28  groundwater.

1    21.    The District is informed and believes and thereon alleges that

2    Olin also poured contaminated wastewater directly into the soil as well as into

3    open air sumps at the Site.  This wastewater included residue generated in washing

4    equipment such as the bowls used for mixing the ignitable material.  Like its

5    disposal pits, Olin's wastewater sumps were unlined.  All material that did not

6    evaporate ultimately soaked into the soil at the Site.

7    22.    The District is informed and believes and thereon alleges that

8    Olin burned waste containing perchlorate in open trenches and in an incinerator,

9    and that said burning was incomplete, causing airborne perchlorate to spread and

10    settle over a large area.

11    23.    The District is informed and believes and thereon alleges that

12    Olin caused several explosions of perchlorate-containing wastes at its Morgan Hill

13    property, causing perchlorate to be scattered about a radius from the locus of the

14    blast.

15    24.    The District is informed and believes and thereon alleges that

16    Olin knew or should have known that its disposal of hazardous substances and

17    waste would contaminate the groundwater, yet it failed to investigate or take

18    meaningful steps to protect the public from the contamination it caused.

19    25.    The District is informed and believes and thereon alleges that a

20    potential purchaser of the Site ultimately discovered perchlorate in the on-site

21    groundwater.  Additional testing revealed perchlorate contamination at multiple

22    locations throughout the Site.  Perchlorate was detected at levels as high as 14,000

23    parts per billion in the soil and 2,600 ppb in the on-site groundwater.

24    26.    The District is informed and believes and thereon alleges that

25    subsequent testing revealed that Olin's perchlorate contamination had migrated off-

26    site through the groundwater, eventually spreading throughout the entire region.

27    The affected area is located in the Llagas Subbasin, a groundwater basin that

28    stretches approximately fifteen miles from Cochrane Road near Morgan Hill to the

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    southern border of Santa Clara County.  Consistent with the prevailing groundwater

2    flow direction in the Subbasin, the majority of Olin's plume of contamination has

3    spread south-southeast from the Property.  While Olin has not yet defined the lateral

4    and vertical extent of its contamination, the massive plume now stretches at least ten

5    miles from Morgan Hill to Gilroy, encompassing most of the Llagas Subbasin.

6         27.    Despite results clearly showing that Olin's contamination had

7    migrated off-site, Olin initially failed to respond in a timely, reasonable manner to

8    the damage and threat it caused to the environment, including area drinking water.

9    Olin delayed in assessing the extent of its groundwater plume, initially declined to

10   provide clean drinking water to homes and businesses affected by its

11   contamination, neglected to sample nearby wells, and failed to provide sufficient

12   information to the concerned public as to the steps it should take to protect itself.

13        28.    Under the District Act, the District is authorized to take various

14   actions as necessary to store and recharge groundwater and prevent interference

15   with, waste to, or diminution of the County's water supply.

16        29.    Since Olin initially failed to act in a timely, reasonable manner to

17   respond to its contamination, it fell to the District to undertake efforts to respond.

18   Among other things, the District sampled hundreds of water wells and provided

19   bottled water to more than one thousand five hundred residents and businesses

20   affected by the contamination caused by Olin's conduct.  To date, the District has

21   incurred more than $4 million in costs as a result of Olin's contamination.

22        30.    To date, despite repeated requests, Olin has failed and refused to

23   reimburse the District for a substantial portion of the costs the District has incurred

24   as a result of Olin's contamination.

25        31.    Olin's conduct was malicious, oppressive and/or fraudulent.

26   Olin engaged in despicable conduct with a willful and knowing disregard of the

27   rights and safety of others.  For example, Olin knew at least as early as July 1986

28   that its careless materials handling and disposal practices may have contaminated

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    the groundwater with pollutants.  While Olin, at that time in 1986, internally

2    discussed setting aside a reserve of $50 million for potential liability regarding

3    groundwater contamination at the Site, it willfully decided to do nothing to protect

4    the groundwater from this threat it had created, failing even to conduct any tests to

5    determine whether its contaminants had spread to the groundwater or to warn the

6    District or the public of this threat.  Even after its contamination was made public,

7    Olin subjected the District to cruel and unjust hardship in knowing disregard of the

8    District's rights by failing to take appropriate steps to remediate and address the

9    consequences of the release as discussed above and by refusing to compensate the

10   District for its response costs.  Among other things, Olin embarked on a strategy in

11   which it refused to honor the District's appropriate requests for reimbursement of

12   costs.  Olin's strategy was to delay reimbursement for as long as possible in order to

13   advance Olin's financial interests.  Further, unbeknownst to the District at the time,

14   Olin developed a plan to try to coerce concessions from the District in return for

15   reimbursement of the District's costs.  As a consequence of implementing this

16   strategy, Olin failed and refused to reimburse the District for costs that the District

17   incurred due to the presence of the contamination resulting from Olin's activities.

18   The District is entitled to punitive and exemplary damages from Olin.

19                          **FIRST CLAIM FOR RELIEF**

20              **(Response Cost Recovery Under CERCLA Section 107(a),**

21                          **42 U.S.C. Section 9607(a))**

22          32.    Paragraphs 1-31 are incorporated herein by reference.

23          33.    Section 107(a) of CERCLA, 42 U.S.C. Section 9607(a),

24   provides in pertinent part:

25          (a)    Notwithstanding any other provision or rule of law, and

26                 subject only to the defenses set forth in subsection (b) of

27                 this section--

28          (1)    the owner and operator of a vessel or a facility,

1    (2)    any person who at the time of disposal of any

2          hazardous substance owned or operated any

3          facility at which such hazardous substances were

4          disposed of,

5    (3)    any person who by contract, agreement, or

6          otherwise arranged for disposal or treatment, or

7          arranged with a transporter for transport for

8          disposal or treatment, of hazardous substances

9          owned or possessed by such person, by any other

10         party or entity, at any facility or incineration vessel

11         owned or operated by another party or entity and

12         containing such hazardous substances,

13              *   *   *   *

14    . . . shall be liable for--

15              *   *   *   *

16    (4)

17         (A)   all costs of removal or remedial action incurred

18               by the United States Government or a State or

19               an Indian tribe not inconsistent with the national

20               contingency plan;

21         (B)   any other necessary costs of response incurred

22               by any other person consistent with the national

23               contingency plan;

24    34.   Olin is a "person" within the meaning of CERCLA Section

25    101(21), 42 U.S.C. Section 9601(21).

26    35.   The Site is a "facility" within the meaning of CERCLA Section

27    101(9), 42 U.S.C. Section 9601(9).

28

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    36.    The District is informed and believes and thereon alleges that
2    Olin's waste deposited at the Site has caused a "release" and/or "releases" within
3    the meaning of CERCLA Section 101(22), 42 U.S.C. Section 9601(22).  The
4    release or releases have consisted of "hazardous substances" within the meaning of
5    CERCLA Section 101(14), 42 U.S.C. Section 9601(14), including, but not limited
6    to, perchlorate and nitrate.

7    37.    The District is informed and believes and thereon alleges that
8    Olin owns the Site, owned and operated the Site at the time of disposal of the
9    hazardous substances, and arranged for the disposal of hazardous substances at the
10   Site.

11   38.    As a result of Olin's release of hazardous substances at the Site,
12   the District has incurred costs, including necessary costs, of response pursuant to
13   CERCLA Section 107(a), 42 U.S.C. Section 9607(a).  In incurring such costs, the
14   District has acted with the oversight of the Regional Water Quality Control Board.
15   The costs have been consistent with, and not inconsistent with, the National
16   Contingency Plan ("NCP"), 40 C.F.R. Part 300.

17   39.    The District is entitled under CERCLA Section 107(a), 42
18   U.S.C. Section 9607(a), to recover from Olin the costs that the District has incurred
19   as a result of the release and threatened release of hazardous substances at the Site,
20   plus interest on such amounts.  Such costs include, but are not limited to, costs
21   incurred by the District in responding to the groundwater contamination and all
22   attorneys' fees and other costs incurred by the District in enforcing Olin's
23   obligations and requirements under applicable laws and regulations.

24   40.    At or about the time of filing the Complaint in this action, the
25   District provided a copy of this Complaint to the Attorney General of the United
26   States and the Administrator of the United States Environmental Protection
27   Agency pursuant to CERCLA Section 113(l), 42 U.S.C. Section 9613(l).

28

A/72251984.4

Case No. C07 03756 RMW

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1                                      **SECOND CLAIM FOR RELIEF**

2                  **(Declaratory Relief Under CERCLA Section**

3                   **113(g)(2), 42 U.S.C. Section 9613(g)(2))**

4          41.     Paragraphs 1-40 are incorporated herein by reference.

5          42.     CERCLA Section 113(g)(2), 42 U.S.C. Section 9613(g)(2),

6   provides in pertinent part:

7            In any action described in this subsection the court shall enter a

8            declaratory judgment on liability for response costs or damages

9            that will be binding on any subsequent action or actions to

10           recover further response costs or damages.

11         43.     The District is entitled to a declaratory judgment pursuant to

12  CERCLA Section 113(g)(2), 42 U.S.C. Section 9613(g)(2), binding as to any

13  subsequent action or actions.  Such judgment shall declare that Olin is liable to the

14  District for any costs, damages and liability that the District may incur as a result

15  of the release or threatened release of hazardous substances at and emanating from

16  the Site.

17                                       **THIRD CLAIM FOR RELIEF**

18                **(Reimbursement Under Cal. Water Code**

19                           **Section 13304)**

20         44.     Paragraphs 1-43 are incorporated herein by reference.

21         45.     California Water Code Section 13304 provides in pertinent

22  part:

23         (a)     Any person who . . . has caused or permitted, causes or

24           permits, or threatens to cause or permit any waste to be

25           discharged or deposited where it is, or probably will be,

26           discharged into the waters of the state and creates, or

27           threatens to create, a condition of pollution or nuisance,

28           shall upon order of the regional board, clean up the waste

1      or abate the effects of the waste, or, in the case of

2      threatened pollution or nuisance, take other necessary

3      remedial action, including, but not limited to, overseeing

4      cleanup and abatement efforts.

5                                    *   *   *   *

6      (c)(1)    If the waste is cleaned up or the effects of the waste

7      are abated, or, in the case of threatened pollution or

8      nuisance, other necessary remedial action is taken by

9      any governmental agency, the person or persons who

10      discharged the waste, discharges the waste, or

11      threatened to cause or permit the discharge of the

12      waste within the meaning of subdivision (a), are

13      liable to that governmental agency to the extent of

14      the reasonable costs actually incurred in cleaning up

15      the waste, abating the effects of the waste,

16      supervising cleanup or abatement activities, or taking

17      other remedial action.

18      46.    The District has incurred costs in response to Olin's actual and

19 threatened discharge and deposition of waste at the Site in accordance with Section

20 13304 of the California Water Code.

21      47.    The District is informed and believes and thereon alleges that

22 Olin is a liable party for conditions at the Site within the meaning of Section

23 13304(c)(1) of the California Water Code.

24      48.    The District is entitled to reimbursement under Section

25 13304(c)(1) of the California Water Code from Olin for all reasonable costs

26 incurred by the District in cleaning up the waste, abating the effects of the waste,

27 supervising cleanup or abatement activities, or taking other remedial action, plus

28 interest.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

# FOURTH CLAIM FOR RELIEF

## (Indemnity Under Cal. Health And Safety

## Code Section 25363(e))

49.    Paragraphs 1-48 are incorporated herein by reference.

50.    California Health and Safety Code Section 25363(e) provides in pertinent part:

> Any person who has incurred removal or remedial action
> costs in accordance with this chapter or the federal act
> [CERCLA] may seek contribution or indemnity from any
> person who is liable pursuant to this chapter . . . In
> resolving claims for contribution or indemnity, the court
> may allocate costs among liable parties using those
> equitable factors which are appropriate.

51.    The District is informed and believes and thereon alleges that Olin has released and continues to release "hazardous substances" at and in the vicinity of the Site within the meaning of Section 25316 of the California Health and Safety Code, including, but not limited to, perchlorate and nitrate.

52.    The District has incurred removal and remedial action costs in response to Olin's release of hazardous substance at the Site within the meaning of Section 25363(e) of the California Health and Safety Code.

53.    The District is informed and believes and thereon alleges that Olin is a liable party for the release of hazardous substances at the Site within the meaning of Sections 25323.5 and 25363(e) of the California Health and Safety Code.

54.    The District is entitled to indemnity under Section 25363(e) of the California Health and Safety Code from Olin with respect to removal and remedial action costs incurred by the District, plus interest.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1    55.    At or about the time of filing the Complaint in this action, the

2    District provided written notice to the Director of the California Department of

3    Toxic Substances Control pursuant to Section 25363(e) of the California Health

4    and Safety Code.

5                      **FIFTH CLAIM FOR RELIEF**

6              **(Common Law Restitution for Unjust Enrichment)**

7    56.    Paragraphs 1-55 are incorporated herein by reference.

8    57.    The District is informed and believes and thereon alleges that

9    Olin had a duty to respond to and abate the effects of the contamination it caused.

10    58.    In incurring costs to respond to Olin's contamination, the

11    District has conferred a benefit on Olin because Olin otherwise would have been

12    required to incur such costs itself.

13    59.    The District is informed and believes and thereon alleges that

14    Olin has been unjustly enriched at the expense of the District in receiving these

15    benefits.

16    60.    The District is entitled to restitution from Olin of all costs

17    incurred by the District as a result of Olin's contamination, plus interest.

18    61.    Olin's conduct was malicious, oppressive and/or fraudulent.

19    Olin engaged in despicable conduct with a willful and knowing disregard of the

20    rights and safety of others.  For example, Olin knew at least as early as July 1986

21    that its careless materials handling and disposal practices may have contaminated

22    the groundwater with pollutants.  While Olin, at that time in 1986, internally

23    discussed setting aside a reserve of $50 million for potential liability regarding

24    groundwater contamination at the Site, it willfully decided to do nothing to protect

25    the groundwater from this threat it had created, failing even to conduct any tests to

26    determine whether its contaminants had spread to the groundwater or to warn the

27    District or the public of this threat.  Even after its contamination was made public,

28    Olin subjected the District to cruel and unjust hardship in knowing disregard of the

1    District's rights by failing to take appropriate steps to remediate and address the

2    consequences of the release as discussed above and by refusing to compensate the

3    District for its response costs.  Among other things, Olin embarked on a strategy in

4    which it refused to honor the District's appropriate requests for reimbursement of

5    costs.  Olin's strategy was to delay reimbursement for as long as possible in order

6    to advance Olin's financial interests.  Further, unbeknownst to the District at the

7    time, Olin developed a plan to try to coerce concessions from the District in return

8    for reimbursement of the District's costs.  As a consequence of implementing this

9    strategy, Olin failed and refused to reimburse the District for costs that the District

10   incurred due to the presence of the contamination resulting from Olin's activities.

11   The District is entitled to punitive and exemplary damages from Olin.

12                      **SIXTH CLAIM FOR RELIEF**

13                              **(Negligence)**

14             62.    Paragraphs 1-61 are incorporated herein by reference.

15             63.    By using, storing, disposing of, and arranging for the disposal

16   of pollutants and contaminants at and in the vicinity of the Site, Olin caused

17   damage and harm as alleged herein and created conditions that were in violation of

18   the law and applicable rules and regulations.  Olin's improper and negligent

19   management of pollutants and contaminants created a duty to abate the hazardous

20   conditions created by such conduct.  Olin has failed, however, to abate fully said

21   conditions.

22             64.    As a direct and proximate result of the acts and omissions of

23   Olin, including its negligence, as alleged herein, the District has been damaged and

24   harmed as alleged herein.  Among other things, the District has been required to

25   defend itself in numerous lawsuits brought by third parties in which the District has

26   been named as defendant.

27             65.    The District is entitled to recover damages for the harm

28   suffered, as alleged herein, including but not limited to the amount of the costs,

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1   including attorney's fees, incurred in defending itself in the lawsuits brought by

2   third parties.

3          66.    Olin's conduct was malicious, oppressive and/or fraudulent.

4   Olin engaged in despicable conduct with a willful and knowing disregard of the

5   rights and safety of others.  For example, Olin knew at least as early as July 1986

6   that its careless materials handling and disposal practices may have contaminated

7   the groundwater with pollutants.  While Olin, at that time in 1986, internally

8   discussed setting aside a reserve of $50 million for potential liability regarding

9   groundwater contamination at the Site, it willfully decided to do nothing to protect

10  the groundwater from this threat it had created, failing even to conduct any tests to

11  determine whether its contaminants had spread to the groundwater or to warn the

12  District or the public of this threat.  Even after its contamination was made public,

13  Olin subjected the District to cruel and unjust hardship in knowing disregard of the

14  District's rights by failing to take appropriate steps to remediate and address the

15  consequences of the release as discussed above and by refusing to compensate the

16  District for its response costs.  Among other things, Olin embarked on a strategy in

17  which it refused to honor the District's appropriate requests for reimbursement of

18  costs.  Olin's strategy was to delay reimbursement for as long as possible in order

19  to advance Olin's financial interests.  Further, unbeknownst to the District at the

20  time, Olin developed a plan to try to coerce concessions from the District in return

21  for reimbursement of the District's costs.  As a consequence of implementing this

22  strategy, Olin failed and refused to reimburse the District for costs that the District

23  incurred due to the presence of the contamination resulting from Olin's activities.

24  The District is entitled to punitive and exemplary damages from Olin.

25              **SEVENTH CLAIM FOR RELIEF**

26                  **(Declaratory Relief Under**

27              **28 U.S.C. Sections 2201 and 2202)**

28          67.    Paragraphs 1-66 are incorporated herein by reference.

1    68.    28 U.S.C. Section 2201 provides:

2    In a case of actual controversy within its jurisdiction . . .

3    any court of the United States, upon the filing of an

4    appropriate pleading, may declare the rights and other

5    legal relations of any interested party seeking such

6    declaration, whether or not further relief is or could be

7    sought.  Any such declaration shall have the force and

8    effect of a final judgment or decree and shall be

9    reviewable as such.

10    69.    An actual controversy exists regarding Olin's liability to the

11    District for costs that the District has incurred and may in the future incur as a

12    result of releases and/or threatened releases of hazardous substances and wastes at

13    and emanating from the Site.

14    70.    A declaratory judgment is necessary for the District to establish

15    its rights against Olin with respect to such costs.

16    71.    With respect to costs, including costs of response, removal,

17    remedial action, and abatement, incurred by the District as a result of the releases

18    and/or threatened releases at and emanating from the Site, the facts giving rise to

19    the controversies for which the District seeks declaratory relief have already

20    occurred, and the incurrence by the District of future costs is neither unlikely,

21    remote, nor speculative.

22    72.    28 U.S.C. Section 2202 provides:

23    Further necessary or proper relief based on a declaratory

24    judgment or decree may be granted, after reasonable

25    notice and hearing, against any adverse party whose

26    rights have been determined by such judgment.

27    73.    The District requests that this Court, after entering the

28    declaratory judgment prayed for herein, retain jurisdiction over this action to grant

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  the District such further relief against Olin as is necessary and proper to effectuate

2  the Court's declaration.

3  **<u>EIGHTH CLAIM FOR RELIEF</u>**

4  **(Declaratory Relief Under California Law)**

5  74.    Paragraphs 1-73 are incorporated herein by reference.

6  75.    A dispute has arisen and an actual controversy exists between

7  the District and Olin because, among other things, the District contends that Olin is

8  obligated to indemnify the District and reimburse the District for all response costs

9  as set forth herein, including but not limited to environmental investigation and

10  remediation costs that have been and will be incurred by the District to respond to

11  the contamination resulting from the releases caused by Olin.  The District is

12  informed and believes, and on that basis alleges, that Olin denies all such

13  obligations.

14  76.    The District requests a judicial determination pursuant to

15  California Code of Civil Procedure § 1060 of the District's right to total or partial

16  reimbursement and indemnification from Olin for all costs incurred by the District

17  as a result of releases of chemical substances as alleged herein.

18  **WHEREFORE,** the District prays for judgment against Olin as

19  follows:

20  1.    For reimbursement and indemnification with respect to all costs

21  of response, removal, remedial action and abatement incurred by the District as a

22  result of the releases and/or threatened releases of hazardous substances and wastes

23  at and emanating from the Site;

24  2.    For damages resulting from the conditions created by Olin;

25  3.    For the District's costs;

26  4.    For punitive and exemplary damages;

27  5.    For pre-judgment interest at the maximum rate and amount

28  allowed by law;

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1          6.    For declaratory judgment that Olin is liable to the District for

2    all future costs and damages, including costs of response, removal, remedial action,

3    and abatement, incurred by the District as a result of the releases and/or threatened

4    releases of hazardous substances and wastes at and emanating from the Site; and

5          7.    For such other and further relief as the Court may deem

6    appropriate.

7    DATED:  October 18, 2007

8

9                    BINGHAM MCCUTCHEN LLP

10

11                   By:    /s/Christopher Berka

12                        CHRISTOPHER BERKA
                          Attorneys for Plaintiff

13                SANTA CLARA VALLEY WATER
                        DISTRICT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2      Plaintiff Santa Clara Valley Water District hereby requests a trial by

3   jury on each Claim for Relief alleged in the Complaint.

4

5   DATED:  October 18, 2007

6
                                        BINGHAM MCCUTCHEN LLP
7

8

9                                 By:     /s/Christopher Berka
                                          CHRISTOPHER BERKA
10                                        Attorneys for Plaintiff
                                       SANTA CLARA VALLEY WATER
11                                             DISTRICT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72251984.4

Case No. C07 03756 RMW

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL