BINGHAM MCCUTCHEN LLP
CHRISTOPHER P. BERKA (SBN 94911)
christopher.berka@bingham.com
GREG A. CHRISTIANSON (SBN 181231)
greg.christianson@bingham.com
SAMANTHA REARDON (SBN 240068)
samantha.reardon@bingham.com
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone: 650.849.4400
Facsimile: 650.849.4800

Attorneys for Plaintiff and Counterdefendant
SANTA CLARA VALLEY WATER DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT,<br><br>    Plaintiff,<br><br>    v.<br><br>OLIN CORPORATION; and DOES 1-10, inclusive,<br><br>    Defendants. | No. C07 03756 RMW<br><br>OPPOSITION TO OLIN'S MOTION TO STRIKE<br><br>Date:    December 14, 2007<br>Time:    9:00 a.m.<br>Place    Courtroom 6<br>Judge:    Hon. Ronald M. Whyte |
| OLIN CORPORATION,<br><br>    Counterclaimant,<br><br>    v.<br><br>SANTA CLARA VALLEY WATER DISTRICT; and DOES 1-10,<br><br>    Counterdefendants. | |

I. INTRODUCTION

    The First Amended Complaint (FAC) alleges that Olin knowingly polluted the groundwater; willfully failed to protect the environment, the District, and the public from the resulting harm; intentionally chose not to reimburse the District for its costs; and planned to

A/72316659.1/3005231-0000321690

1  engage in coercive conduct. These allegations plead facts that satisfy the tests of malice and
2  oppression under Cal. Civ. Code § 3294. Olin's motion to strike the claim for punitive damages
3  in the FAC, therefore, should be denied.
4  II.     ARGUMENT
5      A.    **The Allegations of the First Amended Complaint Relevant to Punitive Damages**
6  
7  The FAC includes allegations that Olin acted negligently with respect to the
perchlorate contamination in the Llagas Sub-basin. The allegations are not limited to simple
negligence, however. In addition to negligent conduct, the FAC alleges that Olin:

- Poured and dumped hazardous substances and waste directly into the soil, unlined pits and open sumps (FAC ¶¶ 1, 20, 21);
- Knew its operations would contaminate the groundwater (FAC ¶ 24);
- Willfully decided to do nothing to protect the groundwater (FAC ¶ 31);
- Failed to investigate or respond in a timely manner (FAC ¶¶ 6, 27);
- Delayed in assessing the extent of the groundwater plume (FAC ¶¶ 2, 6, 24);
- Failed to provide clean drinking water to affected homes and businesses (FAC ¶¶ 6, 27);
- Failed to provide sufficient information to the public about steps necessary to protect against the ill effects of the contamination (FAC ¶¶ 6, 27);
- Willfully failed to warn the District or the public of the threat (FAC ¶ 31);

- Refused to reimburse the District for its costs (FAC ¶¶ 9, 30, 31);
- Planned to delay reimbursement as long as possible in order to advance Olin's financial interests (FAC ¶ 31); and
- Sought to coerce concessions from the District (FAC ¶ 31).

These allegations make it clear that the FAC is not, as argued by Olin, limited to claims that Olin acted negligently in causing the pollution and then simply breached an implied and quasi contract. The FAC also alleges that Olin's acts were intentional, willful, and knowing.

B.  **The Allegations in the First Amended Complaint Support the Claim For Punitive Damages**

Cal. Civ. Code § 3294 allows punitive damages when the defendant is guilty of malice, oppression, or fraud.

Malice is conduct which is either 1) "intended by the defendant to cause injury to the plaintiff" or 2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1).

The FAC alleges both kids of malice.

First, the FAC alleges that Olin intended to pollute the groundwater (FAC ¶¶ 1, 20, 21, 24), intended not to respond in a timely manner (FAC ¶¶ 6, 27, 31), intended not to provide information to the public (FAC ¶¶ 6, 27, 31), intended not to reimburse the District for its costs (FAC ¶¶ 9, 30, 31), and intentionally developed a plan to coerce concessions from the District (FAC ¶ 31). These allegations, by pleading conduct that was intended to injure the District, plead malice under Cal. Civ. Code § 3294(c)(1).

The FAC also alleges the second kind of malice: "despicable conduct" carried on with a "willful and conscious disregard of the rights or safety of others." Olin's despicable conduct included pouring and dumping hazardous substances directly into the soil, unlined pits, and open sumps knowing that it would pollute the groundwater (FAC ¶¶ 1, 20, 21, 24); failing to investigate, respond, warn, or provide the public with clean drinking water or relevant information (FAC ¶¶ 2, 6, 24, 27, 31); intentionally refusing to reimburse the District for the

1 costs it incurred to respond to the contamination (FAC ¶¶ 9, 30, 31); and seeking to coerce concessions from the District as a condition for reimbursement (FAC ¶ 31). These allegations constitute despicable conduct carried on with a willful and conscious disregard of the rights or safety of the District and others. The allegations properly allege the second kind of malice under Cal. Civ. Code § 3294(c)(1).

The FAC also alleges oppression. Cal. Civ. Code § 3294(c)(2) defines oppression as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." As shown above with respect to malice, the FAC alleges despicable conduct. The alleged conduct subjected the District and the public to cruel and unjust hardship: the District was forced to incur costs to respond to the pollution that was caused by Olin, the public's health and safety were jeopardized, and the public and the District lost sources of drinking water.

C. **Olin's Motion to Dismiss the Claim for Punitive Damages Lacks Merit**

As shown above, the FAC includes allegations that satisfy the tests of malice and oppression under Cal. Civ. Code § 3294. Largely ignoring these allegations, Olin argues that the District's claim for punitive damages "fails" for "three reasons." Olin Memo 4:12. A fourth is also suggested in a footnote. All of the arguments offered by Olin, however, are groundless.

1. Negligence

First, Olin contends that "[p]unitive damages are not available for negligence claims." Olin Memo 4:23. Two cases are cited for this proposition. The first, *Ebaugh v. Rabkin*, 22 Cal.App.3d 891 (1972), holds that negligence will not support an award of punitive damages unless accompanied by oppression, fraud, or malice. The second, *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1041 (1992), holds that "when nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice."

*Ebaugh* and *Smith* do not support Olin's blanket assertion that "punitive damages are not available for negligence claims." *Ebaugh* in reality holds the opposite, allowing punitive

A/72316659.1/3005231-0000321690     4

OPPOSITION TO OLIN'S MOTION TO STRIKE

1  damages when negligence is accompanied by oppression, fraud, or malice.  *Smith* holds that

2  "willful, wanton, reckless or unlawful" conduct is not necessarily the same as malice.  Neither

3  case stands for the proposition that punitive damages are not available for negligence claims.

4  Olin further asserts that: "At most plaintiff alleges that Olin was negligent in its

5  handling of perchlorate and has failed to pay the District for all of its remediation costs."  Olin

6  Memo. 5:7.  This argument, however, ignores the allegations in the FAC.  Paragraphs 1, 20, 21,

7  24 and 31 allege that Olin knew it was contaminating the groundwater but engaged in the

8  conduct anyway, and then willfully decided to ignore the problem.  Paragraphs 9, 30, and 31

9  allege that after causing the pollution, Olin failed to deal with the problem, refused to reimburse

10 the District for its costs, and planned to engage in coercive conduct, all consistent with a strategy

11 of delay and coercion.  It is plainly false that "at most" the FAC alleges negligence and failure to

12 pay.

13     2.    Wrongful Conduct Directed to the District

14 Second, Olin argues that in order to plead a claim for punitive damages, the

15 District must allege that Olin's wrongful conduct was directed to the District's rights, not to the

16 rights of the general public.  This argument, however, misses the mark.  In the first place, as

17 discussed above, the FAC does allege that the conduct was intended to harm the District

18 specifically.  In addition, the argument is wrong because specific intent to harm the District is not

19 required to state a claim for malice within the meaning of Cal. Civ. Code § 3294(c)(1).  Malice

20 may consist of a willful and conscious disregard of the rights or safety of "others," not only the

21 rights or safety of the plaintiff.  As alleged in the FAC, Olin acted with a willful and conscious

22 disregard of the rights or safety of both the District and the general public.

23 Three cases are cited by Olin with respect to its argument that the District must

24 allege wrongful conduct directed specifically to the District's rights. The first, *Philip Morris*

25 *USA v. Mayola Williams*, 127 S.Ct. 1057 (2007) does not hold that the wrongful conduct must be

26 specifically directed to the plaintiff.  To the contrary, *Philip Morris* affirms that the jury may

27 take into account in determining reprehensibility that the defendant's conduct risked harm to

28 persons who are not parties to the litigation.  127 S.Ct. at 1065.  The second, *Paulson v. State*

A/72316659.1/3005231-0000321690         5

1. *Farm*, 867 F.Supp. 911, 919 fn 9 (C.D. Cal. 1994), affirmed summary judgment for defendant in an insurance coverage dispute because the full value of the insurance policy was paid, no overt evidence of bad faith was offered, and, as the court said in footnote 9, bad faith alone is not necessarily sufficient to show malice or oppression. *Paulson* does not hold that the wrongful conduct must be directed specifically to the plaintiff in order to be the basis of an award of punitive damages. It held that in that case there was insufficient evidence of malice or oppression directed at anyone. Third, *Silberg v. California Life Ins. Co.*, 11 Cal.3d 452 (1974) affirmed an order for new trial on the issue of punitive damages because there was no evidence of intent to injure. The court held that bad faith conduct was, standing alone, insufficient for punitive damages. *Silberg* also does not require that the intent to injure be directed to the plaintiff. The *Silberg* case does not address that issue.

In sum, the FAC properly pleaded wrongful conduct directed to the District and therefore satisfied the first definition of malice in Cal. Civ. Code § 3294(c)(1). By pleading additional wrongful conduct directed at "others," the FAC also pleads malice under the second definition of malice in that statute.

  3. Restitution

Olin next argues that the Fifth Claim for Relief (Common Law Restitution for Unjust Enrichment) alleges nothing more than a "deliberate breach of contract or agreement," Memo 7:1-2, for which "punitive damages are unavailable." Memo 7:22-23.

This Court ruled in its September 28, 2007 Order Granting Defendant Olin Corp's Motion to Dismiss and Granting in Part and Denying in Part Olin Corp's Motion to Strike, pp. 9-10, that punitive damages are available for restitution claims in California. Consistent with the Order, Olin concedes that punitive damages may be awarded for a restitution claim where the plaintiff alleges facts rising to the level of oppression, fraud, or malice. Olin Memo. 7:18-21. As discussed above, malice and oppression are alleged in the FAC. The claim for punitive damages in the Fifth Claim for Relief, therefore, should not be dismissed.

  4. Olin's Equal Protection Argument

Finally, Olin makes a half-hearted argument under the Equal Protection clause. In

1   footnote 1 on page 6 of its Memorandum, Olin states that "The cases are split as to whether a

2   public entity may even pursue punitive damages in California." Two cases are cited: *City of Los*

3   *Angeles v. Shpegel-Dimsey, Inc.*, 198 Cal.App.3d 1009 (1988) and *City of Glendale v. Superior*

4   *Court*, 95 Cal.App.4th 1266 (2002). Olin fails to disclose, however, that the Ninth Circuit has

5   held that "the rationale of *City of Los Angeles* should not be applied to water districts."

6   *Westlands Water District v. Amoco Chemical Company*, 953 F.2d 1109, 1113 (9th Cir. 1992)

7   Moreover, even as applied to public entities other than water districts, the rationale of *City of Los*

8   *Angeles* was subsequently rejected by *City of Sanger v. Superior Court*, 8 Cal.App.4th 444

9   (1992) and *City of Glendale v. Superior Court*, 95 Cal.App.4th 1266 (2002). See also *21st*

10  *Century Insurance Company v. Superior Court*, 127 Cal.App.4th 1351, 1366 fn 9 (2005). Thus,

11  with respect to water districts, such as the District, there is no split of authority at all. Even with

12  respect to public entities other than water districts, the cases allowing punitive damages

13  outnumber those against by three to one. The more recent authority allows claims by public

14  entities for punitive damages to proceed.

15  III.    CONCLUSION

16          For the reasons given, Olin's motion to strike the claim for punitive damages

17  should be denied.

    DATED: November 21, 2007

18

19                                          Bingham McCutchen LLP

20

21

                                            By:      /s/ Christopher P. Berka
22                                                 Christopher P. Berka
                                            Attorneys for Plaintiff and Counterdefendant
23                                          SANTA CLARA VALLEY WATER
                                                       DISTRICT
24

25

26

27

28