MORGAN, LEWIS & BOCKIUS LLP
MICHAEL E. MOLLAND, State Bar No. 111830
BENJAMIN P. SMITH, State Bar No. 197551
AARON S. DUTRA, State Bar No. 216971
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442.1000
Facsimile: (415) 442.1001
E-mail: mmolland@morganlewis.com
        bpsmith@morganlewis.com
        asdutra@morganlewis.com

CREECH, LIEBOW & KRAUS
RANDALL C. CREECH, State Bar No. 65542
333 West San Carlos Street, Suite 1600
San Jose, CA 95110
Telephone: (408) 993-9911
Facsimile: (408) 993-1335
E-mail: rcreech@sjlegal.com

Attorneys for Defendant
OLIN CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT, <br><br> Plaintiff, <br><br> vs. <br><br> OLIN CORPORATION; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. C 07-03756 RMW <br><br> **DEFENDANT OLIN CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SANTA CLARA VALLEY WATER DISTRICT'S MOTION TO DISMISS PORTIONS OF OLIN'S COUNTERCLAIM** <br><br> Date:      February 1, 2008 <br> Time:      9:00 a.m. <br> Courtroom: Courtroom 6, Fourth Floor <br> Judge:      The Honorable Ronald M. Whyte |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS
1-SF/7651542.2

USDC – N.D. CASE NO. C 07-03756 RMW

1    Defendant and Counterclaimant Olin Corporation ("Olin") respectfully submits the

2    following memorandum of points and authorities in opposition to the motion ("Mo.") of the Santa

3    Clara Valley Water District ("District") to dismiss portions of Olin's Counterclaim.

4    **I.      INTRODUCTION**

5         The compulsory counterclaim of Olin seeks to recover a share of the more than $35

6    million in costs incurred thus far by Olin responding to, and attempting to remediate, perchlorate

7    contamination in the Llagas Subbasin.  Testing and investigation conducted by Olin demonstrate

8    that a substantial portion of the perchlorate contamination at issue – and therefore the significant

9    remediation costs incurred by Olin – is the direct result of actions taken (and not taken) by the

10   District.  Olin alleges that the District knowingly stored, transported and then arranged for the

11   disposal of <u>billions</u> of gallons of perchlorate-contaminated groundwater into the Llagas Subbasin,

12   from which Santa Clara County Residents receive their drinking water.

13        Recognizing the seriousness of Olin's allegations, and the limited defenses available in an

14   action under the Comprehensive Environmental Response, Compensation, and Liability Act

15   ("CERCLA"), the District raises a series of desperate arguments – while ignoring the actual

16   allegations of Olin's Counterclaim – in an effort to avoid discovery into, and a trial examining,

17   the extent of the District's responsibility for contamination of the Llagas Subbasin.  None of the

18   District's arguments have merit and its motion should be denied.

19        <u>First</u>, Olin has sufficiently alleged CERCLA liability against the District as a

20   "transporter," "arranger," and "owner" or "operator" of various facilities used by the District to

21   spread perchlorate-contaminated groundwater throughout the Llagas Subbasin under Section

22   107(a), 42 U.S.C. §9607(a).  In its motion to dismiss, the District simply ignores Olin's

23   allegations of "transporter" liability, overlooks governing definitions establishing that "arranger"

24   liability has been sufficiently pled, and then – in a futile effort to overcome "owner" and

25   "operator" liability – twists the allegations of the Counterclaim to rely on a narrow exception to

26   CERCLA liability for "contiguous property owners" that is, on its face, inapplicable.  The

27   exception was designed to apply to <u>new</u> and <u>innocent</u> purchasers of contaminated land (not

28   existing owners allegedly responsible for contamination), Olin's allegations do <u>not</u> establish

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS          1          USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1   contiguous property ownership (they in fact show the opposite, and the District proffers no

2   judicially-noticeable proof to the contrary), and the District cannot hope to establish, as it must,

3   the eight factors necessary for application of the exception on a motion to dismiss.

4          <u>Second</u>, Olin has sufficiently pled a contribution claim under Section 113(f) of CERCLA.

5   The District provides no authority for its argument that Olin's Section 113(f) claim must

6   somehow be limited in size to the amount of (unspecified) damages alleged by the District against

7   Olin in its complaint.  There is no such authority and, even if there were, damages limitations are

8   not the province of Rule 12(b)(6) motions.

9          <u>Finally</u>, the District's argument that Olin failed to plead compliance with California

10  claims presentation requirements for its state law claims lacks merit.  Olin filed all of its claims as

11  part of a <u>compulsory</u> counterclaim, and only after the District instigated this action and

12  investigated the risks of litigation.  Under such circumstances, any formal failure to plead

13  compliance with claim presentation requirements is excused.  *See, e.g., Krainock v. Superior*

14  *Court,* 216 Cal.App.3d 1473 (1990).  And, even if not excused, Olin could easily plead

15  compliance through its extensive discussions with the District, execution of a tolling agreement

16  regarding Olin's claims, and settlement discussions prior to the time Olin filed suit.  The District

17  was fully informed of Olin's claims every step of the way, and was given every opportunity to

18  avoid this litigation.  It did not.  There is no need to further extend the pleading stage of this case,

19  and the District's motion should be denied in its entirety.

20  **II.    ALLEGATIONS OF OLIN'S COUNTERCLAIM**

21         The bulk of the District's motion to dismiss is premised on a recently-enacted "contiguous

22  property owner" exception to CERCLA which, even if fully credited, only absolves the District of

23  "owner" or "operator" liability under CERCLA, and not "transporter" or "arranger" liability.  To

24  support its strained application of the "contiguous property owner" defense, the District simply

25  ignores or mischaracterizes the allegations of Olin's Counterclaim.  To begin with, it simply

26  assumes – in the face of allegations to the contrary – that <u>all</u> the various District facilities alleged

27  in the Counterclaim are "contiguous" with United Technologies Corporation's Chemical Systems

28  Division (the "UTC site").  Mo. 2:22-24.  Then, the District falsely contends that Olin alleges

1 only that perchlorate generated at the UTC site passively "migrated to Anderson Reservoir and

2 the groundwater in the Llagas sub-basin," and that "Olin does not allege that the District . . .

3 caused the release of the perchlorate to the environment." Mo. 1:16-19. The actual Counterclaim

4 alleges the opposite.

5  Olin alleges that since at least 1960, the District has owned and operated various facilities

6 at different locations in and around the Llagas Subbasin, including Anderson Reservoir, the Main

7 Avenue and Madrone percolation ponds ("Percolation Ponds"), ditches, and miles of tubing (and

8 associated pumps) through which the District conveys water. *See* Counterclaim ¶¶2, 3, 8. Until

9 at least 1987, the District relied upon the Anderson Reservoir to replenish groundwater in the

10 Llagas Subbasin – a subbasin stretching approximately 15 miles in the Southern portion of Santa

11 Clara County. *Id.* at ¶¶20-21. To achieve this goal, the District designed and constructed pipes,

12 water ditches, and Percolation Ponds located away from Anderson Reservoir and over the

13 "deepest portions of the Llagas Subbasin." *Id.* at ¶¶51-52. The Percolation Ponds were designed

14 by the District to allow water "to rapidly seep into the Llagas Subbasin." *Id.*

15  Between 1960 and 2005, UTC developed, manufactured, and tested solid rocket fuels and

16 rocket motors on property located within 500 feet of, but not contiguous with, the Anderson

17 Reservoir. Counterclaim ¶¶3, 24. The UTC site lies within the Las Animas Creek Watershed,

18 and both surface and groundwater from the site drain directly into the Anderson Reservoir. *Id.* at

19 ¶¶24, 40. UTC's operations required the use of tens of millions of pounds of rocket fuel – the

20 primary component of which is <u>ammonium</u> perchlorate – and, for many years, the ammonium

21 perchlorate generated by UTC was both deposited into the ground and burned at the UTC site. *Id.*

22 at ¶¶25, 34 As early as 1960, the District knew of UTC's perchlorate generation, the high water

23 solubility of perchlorate, and that both surface and groundwater from the UTC site drained

24 directly into Anderson Reservoir. Counterclaim ¶40. However, it was not until 1997 that the

25 District began testing for perchlorate in the Anderson Reservoir – and then, only at the surface of

26 the reservoir and in limited locations. *Id.* at 46.

27  Between 1956 and 1988, Olin manufactured signal flares, containing <u>potassium</u>

28 perchlorate, in a Morgan Hill facility North of the Llagas Subbasin. Counterclaim ¶13. After

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS    3    USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1  learning in late 2000 that perchlorate had been detected beneath Olin's Morgan Hill facility, Olin

2  notified responsible officials and began extensive remediation efforts at the direction of the

3  California Regional Quality Control Board, Central Coast Region (the "Regional Board"). *Id.* at

4  ¶¶13-15. To date, Olin has spent over $35 million in remediation efforts as directed by the

5  Regional Board. *Id.*

6        The District instituted this lawsuit in July 2007 to recover certain remediation costs it

7  incurred in connection with perchlorate contamination, claiming that Olin's perchlorate

8  contamination migrated from its site to the Llagas Subbasin. Olin – in connection with its

9  investigation of sources of perchlorate North of its facility – had discovered that perchlorate

10  contamination within the Llagas Subbasin was caused, in significant part, by District actions.

11  Counterclaim ¶17. Olin alleges both that perchlorate-contaminated water stored in the Anderson

12  Reservoir "seeped out of the reservoir and into the groundwater of the Llagas Subbasin," *and*,

13  most significantly, that "untreated water containing perchlorate was piped by the District directly

14  from the Anderson Reservoir into District percolation ponds and facilities within the Llagas

15  Subbasin." *Id.* at ¶¶49-51. Olin specifically alleges that the District has "discharge[d], inject[ed],

16  and transfer[red] billions of gallons" of contaminated water into the Llagas Subbasin, where it is

17  used for drinking water by Santa Clara County residents. *Id.* at ¶8.

18        On account of District actions – including the storage of millions of gallons of

19  contaminated water and the conveyance and injection of that water into the Llagas Subbasin –

20  Olin seeks to recover a share of the more than $35 million in costs it has unjustly incurred to

21  respond to contamination caused, in substantial part, by the District.

22  **III.**    **ARGUMENT**

23      **A.**    **The Governing Standard**

24        In resolving a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "[a]ll

25  allegations of material fact are taken as true and construed in the light most favorable to the

26  nonmoving party." *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996).

27  Dismissal is proper only if Olin "can prove no set of facts in support of [its] claim which would

28  entitle [it] to relief." *Id.* Generally, motions to dismiss for failure to state a claim are regarded

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS          4          USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1    with disfavor and are rarely granted without leave to amend. *Hall v. City of Santa Barbara,* 833

2    F.2d 1270, 1274 (9th Cir. 1987), *cert. denied,* 485 U.S. 940 (1988).

3              **B.     Olin Has Properly Alleged CERCLA Liability Claims Against the District**

4              CERCLA is a strict liability statute, and liability may attach under Section 107(a) even

5    when a defendant neither generated nor is aware of a release of a hazardous substance. *See, e.g.,*

6    *Pakootas v. Teck Cominco Metals Ltd.,* 452 F.3d 1066, 1078, fn. 18 (9th Cir. 2006).

7              To establish a *prima facie* liability case under Section 107(a), four elements must be

8    shown: (1) the site at which there is an actual or threatened release of hazardous substances

9    constitutes a "facility" under Section 101(9); (2) a "release" or "threatened release" of a

10   hazardous substance from the facility has occurred; (3) the release has caused the plaintiff or

11   counterclaimant to incur response costs that are both "necessary" and "consistent with the

12   national contingency plan"; and (4) the defendant is within one of the four classes of "potentially

13   responsible parties," or "PRPs," subject to liability under Section 107(a). *See Pakootas,* 452 F.3d

14   at 1073-4; *Carson Harbor Village Ltd. v. County of Los Angeles,* 433 F.3d 1260, 1265 (9th Cir.

15   2006).

16             The District concedes that Olin has properly pled the first three elements of a Section

17   107(a) CERCLA claim, but maintains that Olin failed to properly allege its status as a PRP.

18   Section 107(a) of CERCLA establishes four categories of PRPs, including (1) current owners or

19   operators of a facility; (2) persons who owned or operated a facility in the past at a time of

20   hazardous substance disposal; (3) persons who arranged for disposal or treatment of hazardous

21   substances at a facility ("arrangers"); and (4) persons who accepted hazardous substances for

22   transport to disposal or treatment facilities ("transporters"). 42 U.S.C. §9607(a).

23             Olin has properly alleged fact to show that the District is liable under Section 107(a)(1) as

24   a current owner or operator, under Section 107(a)(3) as an "arranger," and under Section

25   107(a)(4) as a transporter. Counterclaim ¶¶ 59-67. The District's contentions to the contrary are

26   without merit.

27             **C.     Olin Sufficiently Alleges District Liability as a "Transporter"**

28             For unclear reasons, the District contends that Olin only alleges "owner" or "operator"

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS          5          USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

and "arranger" liability.  *See* Mo. 2:8-11.  However, the District makes no mention of transporter liability, which is also alleged by Olin.  *See* Counterclaim ¶3 (alleging "historical District conveyances" of perchlorate-contaminated water from Anderson Reservoir to the Percolation Ponds), ¶20 (alleging conveyance of water from Anderson Reservoir through "ditches"), ¶51 ("untreated water containing perchlorate was piped by the District"), ¶64 (alleging that District has "arranged for the storage or transfer of such hazardous substances at one or more of its facilities").  Under these facts, Olin has properly alleged the District's status as a PRP, and its motion to dismiss should be denied, because CERCLA defines "transportation" as "the movement of a hazardous substance by <u>any mode</u> . . ."  42 U.S.C. §9601(26) (emphasis added).  Because the District moved contaminated water from the Anderson Reservoir to various locations within its jurisdiction, and thereby contaminated the Llagas Subbasin with perchlorate, Olin has sufficiently alleged transporter liability.  *See, e.g., Kaiser Aluminum & Chemical Corp., v. Catellus Development Corp.,* 976 F.2d 1338, 1343 (9th Cir. 1992) ("We conclude that liability may be imposed under section 9607(a)(4) for transporting hazardous material to an uncontaminated area of property, regardless of whether the material was conveyed to a separate parcel of land").

### D.    Olin Sufficiently Alleges District Liability as an "Arranger"

Olin also alleges "arranger" liability against the District on the grounds the District conveyed billions of gallons of perchlorate-contaminated groundwater from Anderson Reservoir to the Llagas Subbasin.  *See* Counterclaim ¶¶ 60-66.  The District contends that because the Counterclaim alleges "storage or transfer" of contaminated water by the District, rather than "disposal or treatment" of that water, no "arranger" liability claim has been stated.

The District's word games ignore the definition of "disposal" under CERCLA.  CERCLA defines the term "disposal" by reference to the Resource Conservation and Recovery Act of 1976 ("RCRA").  *See* 42 U.S.C. §9601(29).  Under RCRA, and therefore CERCLA, "disposal" is broadly defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. §9601(22); *Castaic Lake Water*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS
1-SF/7651542.2                                              6                    USDC – N.D. CASE NO. C 07-03756 RMW

1   *Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1069 (C.D. Cal. 2003) (finding that perchlorate

2   was "disposed" for purposes of arranger liability in part because waste containing perchlorate was

3   "spilled onto the ground at the site"). Here, Olin alleges far more than "spilling" of perchlorate-

4   contaminated water. Olin alleges direct piping, injection, and deposit of perchlorate-

5   contaminated water into the Llagas Sub-basin, thereby properly alleging the District arranged for

6   the "disposal" of waste. *See* Counterclaim ¶¶ 6, 8, 21, 49-58, 63, 64.

7           The single case cited by the District to support its argument that "storage or transfer" of

8   waste is insufficient to allege "arranger" liability, *Carson Harbor Village, Ltd. v. Unocal Corp.*,

9   287 F.Supp.2d 1118, 1193 (C.D. Cal. 2003), is easily distinguishable. In the case, decided on

10  summary judgment, the court found no "arranger" liability because of a lack of evidence that the

11  public entity defendants actively participated in (rather than merely had regulatory authority over)

12  the contamination at issue. *Id.* at 1193. Here, Olin alleges exactly what was missing in *Carson*

13  *Harbor Village, i.e.,* the actual piping, injection, deposit, and disposal of waste. As such, *Carson*

14  *Harbor Village* in inapposite and Olin has sufficiently pled a <u>second</u> basis for holding the District

15  liable as a PRP.

16          **E.      <u>Olin Sufficiently Alleges District Liability as a Current Owner and Operator</u>**

17          Olin also alleges "owner" and "operator" liability against the District on the grounds the

18  District owns and operated various "facilities" – including Anderson Reservoir, the Percolation

19  Ponds, ditches, and pumping and piping systems – used to spread contaminated water throughout

20  the Llagas Subbasin. As with other aspects of CERCLA, liability as an "owner" or "operator" is

21  expansive. *See, e.g., 3550 Stevens Creek Assocs. v. Barclays Bank of California,* 915 F.2d 1355,

22  1363 (9th Cir. 1990) (CERCLA imposes strict liability upon owners and operators); *Kaiser*

23  *Aluminum & Chemical Corp.,* 976 F.2d at 1342 (excavation contractor hired by city of Richmond

24  who merely "spread" previously contaminated soil over other parts of property could be held

25  liable as "operator" of facility); *Southern California Water Co. v. Aerojet-General Corp.,* 2003

26  U.S. Dist. LEXIS 26534 at *16 (C.D. Cal. April 1, 2003) ("[C]ourts construing CERCLA have

27  determined that mere ownership of contaminated property is sufficient to impose liability . . .

28  regardless of any responsibility or lack of responsibility for the contamination").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS          7          USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1    Despite this, the District maintains that no claim for "owner" or "operator" liability may

2    be stated because perchlorate from the UTC site simply "migrated onto the District's contiguous

3    property," and a narrow exception crafted by Congress in 2002 (CERCLA Section 107(q), 42

4    U.S.C. §9607(q)) precludes a finding of "owner" or "operator" liability.  The District could not be

5    more wrong.  The purported exception does not apply under the facts alleged in this case and,

6    even if it did, the District cannot hope to meet its burden in establishing the exception on a motion

7    to dismiss.

8           1.      **The Exception Created by Section 107(q) is Designed to Apply to
                    Innocent Purchasers of Land, Not Existing Owners Who Caused
9                    Contamination**

10   The Section 107(q) exception relied upon by the District is the result of 2002 amendments to

11   CERCLA through the Brownfield Revitalization and Environmental Restoration Act.  *See*

12   *AMCAL Multi-Housing, Inc. v. Pac. Clay Prods.,* 457 F. Supp. 2d 1016, 1028 (C.D. Cal. 2006).

13   Section 107(q) provides, in pertinent part, that an owner of real property "that is contiguous to or

14   otherwise similarly situated with respect to, and that is or may be contaminated by a release or

15   threatened release from, real property that is not owned by that person shall not be considered to

16   be an owner or operator of a vessel or facility . . . solely by reason of the contamination . . ." so

17   long as eight separate factors specified in the statute are met.  42 U.S.C. §9607(q).

18          Olin is unaware of <u>any</u> case applying the Section 107(q) exception at <u>any</u> stage of

19   litigation (let alone a motion to dismiss), but it is clear based on the legislative history that the

20   exception has no application here.  Section 107(q) was designed to encourage "redevelopment or

21   other beneficial reuse" of "brownfield" sites by <u>new</u> property owners who did not cause,

22   contribute, or consent to contamination of those sites.  *See* 107 S. Rpt. 2 (2001).  As noted by one

23   case discussing the addition of the Section 107(q) exception, along with a "bona fide purchaser"

24   exception added at the same time:

25          The 2002 amendments sought to provide incentives for investors to
            purchase and redevelop so-called brownfield sites, usually vacant or
26          mothballed parcels of industrial or commercial property in
            economically depressed downtown urban areas that sit idle out of
27          fear by potential investors that the property is possibly
            contaminated, thereby exposing those who would invest in
28          purchasing and re-developing the site to potential liability under

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS          8          USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1
2
3

CERCLA.  One method of incentivizing such redevelopment was by broadening the innocent landowner defense and by creating new "bona fide purchaser" and "contiguous property" categories against PRP designation <u>to protect new purchasers of contaminated properties</u>.

4

*AMCAL Multi-Housing, Inc.,* 457 F. Supp. 2d at 1028 (emphasis added).  *See also United States*

5

*v. General Battery Corp., Inc.*, 423 F.3d 294, 303 fn. 8 (3rd Cir. 2005).

6

Olin makes no allegation, and the District makes no showing, that it is a new innocent

7

purchaser of contaminated land.  Just the opposite, Olin alleges that the District has continuously

8

owned and operated various "facilities" since 1960, consented to UTC's perchlorate-generating

9

activities, and actively caused contamination of the Llagas Subbasin.  *See, e.g.,* Counterclaim ¶¶

10

2, 6, 8, 21, 26-58, 62-64.  Under these facts, Section 107(q) simply cannot apply.

11

### 2.    The District Makes No Showing that its Property is Contiguous With the UTC Site

12
13

Although the District claims that it owns property "contiguous to or otherwise similarly

14

situated with respect to the UTC site," the Counterclaim alleges the opposite.  Specifically, the

15

Counterclaim alleges that Anderson Reservoir is approximately 500 feet from the UTC site, and

16

also alleges the existence of other "facilities" unspecified distances <u>away</u> <u>from</u> the UTC site.  *See*

17

Counterclaim ¶¶3, 24, 51-52.  Although the term "contiguous" is not defined by Section 107(q), it

18

is clear, based on its ordinary meaning, that contiguity requires that District property and the UTC

19

site touch one another.  *See United States v. Great American Indemnity Co. of New York,* 214

20

F.2d 17, 19 (9th Cir. 1954) (the usual and ordinary meaning of "contiguous," "adjoining," and

21

"touching" is the same).  Because there is no allegation in the Counterclaim that <u>any</u> of the

22

District's many "facilities" and UTC's properties are contiguous or touch, the District has failed

23

to show that it holds the statutorily-required status as a "contiguous" landowner.

24

### 3.    The District Has Not and Cannot Demonstrate the Eight Separate Factors for Application of the Exception on a Motion to Dismiss

25

For Section 107(q) to apply, the District must establish, by a preponderance of the

26

evidence, that eight separate conditions specified in the statute have been met.  42 U.S.C.

27

§9607(q)(1)(B).  Of course, no evidentiary showing – let alone by a preponderance of the

28

evidence – is possible on a motion to dismiss.  *See, e.g., McMillan v. Collection Professionals*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS          9          USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

*Inc.*, 455 F.3d 754 (7th Cir. 2006) (question of whether defendant took reasonable steps to stop or limit release, one of the factors required by Section 107(q) exception, is a question of fact that cannot be resolved on a motion to dismiss). Moreover, even if the allegations of a pleading could constitute a "preponderance of the evidence," the District fails to demonstrate the eight statutory factors, only two of which need be examined here:

- Section 107(q)(1)(A)(i) – The District did not "cause, contribute, or consent to the release": As noted above, Olin alleges that the District caused, contributed, and consented to the release. Accordingly, the District cannot even meet the first of the eight factors required for application of the Section 107(q) exception.

- Section 107(q)(1)(A)(iii) – The District took reasonable steps to stop "any continuing release" and to prevent exposure: Olin's Counterclaim alleges that the District's actions were unreasonable, and were performed without due care, because those actions introduced perchlorate into the Llagas Subbasin. Counterclaim ¶¶ 3-6, 23-58, 49-58, 81. In response, the District oddly contends only that it took steps to prevent exposure because it obtained a permit "to use Anderson Reservoir as a drinking water reservoir." Mo. 3:10-14. It is entirely unclear how obtaining a drinking water permit has anything to do with efforts to prevent groundwater contamination.

Section 107(q) is inapplicable given the facts alleged in this case and, even if it could be shown to apply, the District has not and cannot meet its significant burden of proof in establishing the exception.

### F.    Olin Has Properly Alleged a CERCLA Section 113(f) Claim

The District contends that Olin's CERCLA Section 113(f) claim for contribution fails for the same reasons as its liability claims under Section 107, *i.e.,* because the Counterclaim fails to allege the District's status as a PRP. Mo. 4:25-5:3. Given the arguments above, however, it is clear that liability has been sufficiently alleged against the District as a transporter (Section 107(a)(4)), an arranger (Section 107(a)(3)), and as an owner or operator (Section 107(a)(1). As such, the District's first argument fails.

Bizarrely, the District next contends that Olin's stated claim for contribution seeks a remedy that is "not available under Section 113(f)" because Olin seeks recovery that is broader than Olin's liability to the District. Mo. 5:17-24. The District cites no authority for the proposition that contribution claims of any type, let alone those under CERCLA, are somehow

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS                    10                    USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1   limited to the plaintiff's recovery, and nothing in CERCLA limits the depth or breadth of a

2   contribution claim.  Moreover, Federal Rule of Civil Procedure 13(c) specifically provides that

3   compulsory counterclaims like that here "may request relief that <u>exceeds in amount</u> or differs in

4   kind from the relief sought by the opposing party."  Fed. R. Civ. P. 13(c) (emphasis added).

5            In addition to lacking substantive support, the District's argument is procedurally

6   misplaced.  The District never bothers to explain how – on a motion to dismiss – the Court could

7   somehow limit Olin's potential contribution recovery to an amount left unspecified in the

8   District's First Amended Complaint.  Thus, the District's argument, even if legally tenable,

9   cannot be resolved in the context of a pleading challenge.

10          **G.    California's Claims Presentation Requirements are Inapplicable to a
                    Compulsory Counterclaim**

11

12          The District argues that Olin's state law claims fail to allege facts showing compliance

13   with California claims presentation requirements.  These requirements, codified at California

     Government Code Section 905, *et. seq.*, were designed to provide notice of claims to public
14
     entities so that the entities can investigate and settle claim where appropriate.  *City of San Jose v.*
15
     *Superior Court,* 12 Cal.3d 447, 455-6 (1974).  They were <u>not</u> designed, as advanced here by the
16
     District, to be used as procedural shields to liability.  *Krainock,* 216 Cal.App.3d at 1477.
17
             Here, Olin need not allege compliance with claims presentation requirements because the
18
     District initiated suit <u>against</u> Olin alleging contamination of the Llagas Subbasin, and presumably
19
     investigated all risks and benefits attendant filing suit, including the risk that Olin might file a
20
     compulsory counterclaim regarding that same contamination.  It is disingenuous, at best, for the
21
     District to now argue that it was deprived notice of claims regarding the very same perchlorate
22
     contamination at issue in its own complaint.  *See, e.g., Hydranautics v. FilmTec Corp.,* 70 F.3d
23
     533, 536 (9th Cir. 1995) (compulsory counterclaims are barred if not asserted in the pending
24
     action).
25
             In *Krainock v. Superior Court,* a case involving claims and counterclaims arising from a
26
     school brawl, the court concluded that it would be "unjust" to hold a cross-claimant student to the
27
     claims presentation requirements because the cross-defendant "had the opportunity to investigate
28

1   the relevant facts of the incident giving rise to all these claims before [the student] ever filed his

2   cross-complaint, [therefore] all applicable policies established in the governmental claims statutes

3   have been adequately protected in this procedural context." *Krainock*, 216 Cal.App.3d at 1479.

4   *See also People ex. rel. Dept. of Parks and Recreation v. West-A-Rama, Inc.,* 35 Cal.App.3d 786,

5   794 (1973) (finding it "manifestly unjust" to allow state to sue for breach of contract and "then

6   use what amounts to a notice statute to shield itself from a cross-complaint asserted by the

7   defendant in the same suit and arising from that very contract").  The same is true here, especially

8   with regard to Olin's indemnity claims, the value of which can only be determined if and when

9   the District proves recoverable damages.  *See People ex rel. Department of Transportation v.*

10  *Superior Court,* 26 Cal.3d 744, 763 (1980) (finding application of claims filing requirements

11  "either meaningless or superfluous" in context of cross-claims for indemnity).

12          Even assuming application of the claims presentation requirements here, and Olin's

13  formal failure to allege compliance with those requirements, compliance was achieved and could

14  easily be pled.  All that is required is that the governmental entity be notified of the claim and

15  have an opportunity to investigate and potentially settle the matter.  *Jamison v. State of*

16  *California*, 31 Cal.App.3d 513 (1973).  Further, "public policy permits substantial compliance

17  with claims requirements if no prejudice to the governmental entity appears." *Id.* at 516-18.  The

18  District has had notice of Olin's claims and the opportunity to investigate and settle Olin's claims

19  by virtue of at least the following:

20      •   The District's investigation of the <u>same</u> operative facts from which its complaint
21          derives prior to filing suit on July 20, 2007;

22      •   Protracted discussions between the District and Olin before the District filed suit;

23      •   A mediation between the parties in Spring 2007; and

24      •   A tolling agreement between the parties from February 2007, specifically
25          mentioning claims that might be brought by Olin.

26  Moreover, upon receipt of the District's motion to dismiss, and in an abundance of caution, Olin

27  served further notice of its claims against the District on December 18, 2007.

28          The District's claims presentation argument is hyper-technical makeweight and its motion

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS        12        USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1   to dismiss Olin's state law claims should be denied.  It is time to move past the pleadings stage of

2   this lawsuit and begin discovery.  It would make no practical sense to require Olin to amend its

3   Counterclaim to include an allegation that it complied with the claims presentation requirements

4   when the underlying purpose of these requirements has already been fulfilled.

5   **III.**    <u>**CONCLUSION**</u>

6        For the foregoing reasons, Olin respectfully requests the Court deny the District's motion

7   to dismiss in its entirety.

8   Dated: January 11, 2008               MORGAN, LEWIS & BOCKIUS LLP

9                                 By_____/S/_____

10                                    Michael E. Molland

11                               Attorneys for Defendant
OLIN CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OLIN'S OPPOSITION TO MOTION TO DISMISS         13         USDC – N.D. CASE NO. C 07-03756 RMW
1-SF/7651542.2

1

## TABLE OF CONTENTS

2
**Page**

3   I.      INTRODUCTION ............................................................................................................1

4   II.     ALLEGATIONS OF OLIN'S COUNTERCLAIM ......................................................2

    III.    ARGUMENT ...................................................................................................................4

5           A.    The Governing Standard ....................................................................................4

6           B.    Olin Has Properly Alleged CERCLA Liability Claims Against the District ........5

7           C.    Olin Sufficiently Alleges District Liability as a "Transporter"...........................5

            D.    Olin Sufficiently Alleges District Liability as an "Arranger" .............................6

8           E.    Olin Sufficiently Alleges District Liability as a Current Owner and
9                 Operator...............................................................................................................7

10                1.    The Exception Created by Section 107(q) is Designed to Apply to
                        Innocent Purchasers of Land, Not Existing Owners Who Caused
                        Contamination ........................................................................................8

11
12                2.    The District Makes No Showing that its Property is Contiguous
                        With the UTC Site ..................................................................................9

13                3.    The District Has Not and Cannot Demonstrate the Eight Separate
                        Factors for Application of the Exception on a Motion to Dismiss.............9

14          F.    Olin Has Properly Alleged a CERCLA Section 113(f) Claim ............................10

15          G.    California's Claims Presentation Requirements are Inapplicable to a
                  Compulsory Counterclaim .................................................................................11

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*3550 Stevens Creek Assocs. v. Barclays Bank of California,*
915 F.2d 1355, 1363 (9th Cir. 1990 .................................................................7

*AMCAL Multi-Housing, Inc. v. Pac. Clay Prods.,*
457 F. Supp. 2d 1016, 1028 (C.D. Cal. 2006) ..........................................8, 9

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336, 337-38 (9th Cir. 1996) ..............................................................4

*Carson Harbor Village Ltd. v. County of Los Angeles,*
433 F.3d 1260, 1265 (9th Cir. 2006) ..............................................................5

*Carson Harbor Village, Ltd. v. Unocal Corp.,*
287 F.Supp.2d 1118, 1193 (C.D. Cal. 2003) ................................................7

*Castaic Lake Water Agency v. Whittaker Corp.,*
272 F.Supp.2d 1053, 1069 (C.D. Cal. 2003) ...............................................7

*City of San Jose v. Superior Court,*
12 Cal.3d 447, 455 (1974) ............................................................................11

*Hall v. City of Santa Barbara,*
833 F.2d 1270, 1274 (9th Cir. 1987), *cert. denied,* 485 U.S. 940 (1988) .........5

*Hydranautics v. FilmTec Corp.,*
70 F.3d 533, 536 (9th Cir. 1995) ..................................................................11

*Jamison v. State of California,*
31 Cal.App.3d 513 (1973) ............................................................................12

*Kaiser Aluminum & Chemical Corp., v. Catellus Development Corp.,*
976 F.2d 1338, 1343 (9th Cir. 1992) .........................................................6, 7

*Krainock v. Superior Court,*
216 Cal.App.3d 1473 (1990) .............................................................2, 11, 12

*McMillan v. Collection Professionals Inc.,*
455 F.3d 754 (7th Cir. 2006) ........................................................................10

*Pakootas v. Teck Cominco Metals Ltd.,*
452 F.3d 1066, 1078, fn. 18 (9th Cir. 2006) .................................................5

*People ex rel. Department of Transportation v. Superior Court,*
26 Cal.3d 744, 763 (1980) ............................................................................12

*People ex. rel. Dept. of Parks and Recreation v. West-A-Rama, Inc.,*
35 Cal.App.3d 786, 794 (1973) ....................................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Southern California Water Co. v. Aerojet-General Corp.,*
   2003 U.S. Dist. LEXIS 26534 at *16 (C.D. Cal. April 1, 2003) ................................7

*United States v. General Battery Corp., Inc.,*
   423 F.3d 294, 303 fn. 8 (3rd Cir. 2005) ...............................................................9

*United States v. Great American Indemnity Co. of New York,*
   214 F.2d 17, 19 (9th Cir. 1954) .............................................................................9

### Statutes

42 U.S.C. §9601(22) ...........................................................................................6

42 U.S.C. §9601(26) ...........................................................................................6

42 U.S.C. §9601(29) ...........................................................................................6

42 U.S.C. §9607(a) ..........................................................................................1, 5

42 U.S.C. §9607(q) ...........................................................................................8

42 U.S.C. §9607(q)(1)(B) ....................................................................................9

Fed. R. Civ. P. 13(c).........................................................................................11

### Other Authorities

CERCLA Section 107(q)......................................................................................8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO