**E-FILED on** 8/31/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT,<br><br>         Plaintiff,<br><br>    v.<br><br>OLIN CORPORATION; and DOES 1-10, inclusive,<br><br>         Defendants. | No. C-07-03756 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS<br><br>**[Re Docket No. 109]** |

Presently before the court is defendant's motion for summary judgment or partial summary judgment on plaintiff's remaining cost recovery claims.[1]  The motion came on for hearing before the court on June 12, 2009.  Plaintiff opposed the motion.  Following oral argument, the motion was submitted for decision.  Having considered the papers submitted by the parties and the arguments of counsel, and for good cause appearing for the reasons set forth below, defendant's motion is granted in part and denied in part.

---

[1] Defendant has previously moved for summary judgment or partial summary judgment on the District's "recharge costs," and the present motion targets the remaining cost recovery claims.

# I. BACKGROUND

Olin Corporation is the owner of real property in Morgan Hill, which is the source of perchlorate contamination in the Llagas Subbasin groundwater. Santa Clara Valley Water District ("SCVWD" or "District") filed suit against Olin in 2007 seeking to recover costs it incurred in response to the contamination, including costs of providing bottled water to customers, providing technical advice to affected cities, and other items. The total amount of claimed damages was in the range of $4 million. More recently, the District disclosed that it is seeking to recover the full cost of the District's "recharge" operations incurred since 2003.[2] The total "recharge costs" exceed $29 million. In 2007, Olin paid approximately $1.2 million to the District to reimburse it for the District's out-of-pocket costs incurred in connection with water sampling and the supplying of bottled water. Motion at 4, Smith Decl. Exs. 2 and 8. The District's total claimed response costs, taking into account Olin's payment, are categorized as follows:

| Category | Direct Labor | Services & Support | Total |
|---|---|---|---|
| Bottled Water | $89,535 | $819,441 | $908,976 |
| Water Sampling | 217,313 | 81,303 | 298,616 |
| Public Notification & Participation | 442,710 | 1,133 | 443,843 |
| Technical Support | 546,193 | 69 | 546,262 |
| Municipal Water Treatment | 64,090 | 320,828 | 384,918 |
| Coordination of Response by Affected Public Entities | 115,630 | 0 | 115,630 |
| Legal & Technical | 58,631 | 139,109 | 197,741 |
| Private Water Treatment | 3,805 | 24,701 | 27,876 |
| Recharge | | | 29,840,085 |
| Olin's Payment | | | (1,201,967) |
| **Total** | **$1,537,907** | **$1,385,955** | **$31,561,980** |

Berka Decl. ¶15, Exh.M.

---

[2] The court granted summary judgment in favor of Olin on the District's recharge costs after the present motion was taken under submission.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                                  2

## II.  ANALYSIS

### A.  General Standards on Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Where a defendant moves for summary judgment on an issue upon which the plaintiff bears the burden of proof at trial, the moving defendant may meet its burden by showing that there is an absence of evidence to support the non-moving party's case, *Celotex*, 477 U.S. at 325, or by submitting affirmative evidence that disproves an essential element of the plaintiff's claim. *Adickes v. S.H. Kresss & Co.*, 398 U.S. 144, 158-160 (1970).

After the moving party has met its burden under Rule 56(c), then the non-moving party has the burden of coming forward with admissible evidence to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2). If the non-moving party does not do so, then summary judgment is appropriate. *Id.*, *Celotex*, 477 U.S. at 322. If the evidence is not sufficient for a reasonable jury to find in plaintiff's favor, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986).

### B.  Motion for Partial Summary Judgment on Cost Recovery Claims Under CERCLA

Olin moves for summary judgment on the District's CERCLA claims, or alternatively for partial summary judgment, asserting that SCVWD cannot establish a prima facie case under CERCLA that: 1) its costs were "response costs"; 2) the costs were caused by perchlorate contamination, 3) the costs were necessary; 4) the costs were consistent with the national

*United States District Court*
*For the Northern District of California*

contingency plan; and 5) that the actions resulted in a "CERCLA-quality cleanup." Motion at 7. Olin challenges the asserted costs by categories.

### 1. Legal fees

The District seeks to recover $197,741 in the category of "Legal & Technical" fees. The District admits that this category includes the expenses incurred in defending the District against litigation filed by third parties as well as the District's legal fees incurred in the present litigation "as a result of enforcing California Water section 13304." Opp. at 9. The category also includes costs associated with the District's retention of a consultant to prepare a conceptual corrective action plan. *Id.*

Olin attacks the District's cost category focusing on the District's inability to recover its legal expenses incurred in defending third-party actions as not recoverable as "costs of response" under CERCLA, citing *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), for the proposition that litigation-related attorneys' fees that bear no relationship to the actual cleanup are not recoverable as costs of response under CERCLA. Motion at 8.

The District argues in response that it is entitled to seek recovery of its present litigation expenses because CERCLA permits recover of "costs of response," and "response" is defined to include "enforcement activities related thereto," and through this action the District is seeking to enforce Section 13304 of the California Water Code. Opp. at 13. The District also clarifies that it seeks to recover it third-party litigation expenses through its negligence claim under the tort of another doctrine and does not seek to recover such expenses through its CERCLA claims. Opp. at 13 n.3.

Partial summary judgment is appropriate here. To the extent the District seeks to recover its legal expenses incurred in defending against third party litigation under its negligence claim through application of the "tort of another" doctrine, the court has already granted Olin's motion for summary judgment on that claim, and the District cannot recover this component of its claimed damages. Moreover, to the extent the District seeks to recover the attorney's fees it has incurred in the present litigation, those too are not recoverable. The District's argument for recovery of such fees is flawed.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                                                           4

The District's claim under the Water Code is a separate legal claim which itself does not appear to provide for recovery of attorney's fees. The District's argument, if accepted, would allow a party to recover its litigation-related attorney's fees under CERCLA, for enforcing a state statute that does not itself permit recovery of attorney's fees, even though attorney's fees incurred in litigating a CERCLA action are also generally not recoverable under *Key Tronic*. There is no legal basis for permitting the District to recover its litigation-related attorney's fees in this action. Partial summary judgment in favor of Olin is appropriate. The motion is denied as to any other legal or technical fees, as Olin has not directed its motion to any other specific type of technical or legal fees.

## 2. Whether Indirect Labor Costs Are Not Recoverable Because They Were Not Caused by The Release of Perchlorate

Olin argues that the District's asserted costs are recoverable because they are comprised principally of staff costs, rather than "hard costs," which the District would have incurred in any event, and thus are not costs that were "caused" by the perchlorate contamination.

Ninth Circuit law on this point is not clear. Causation of response costs does appear necessary. *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177 (9th Cir. 2000) (discussing causation element where two parties equally are responsible for contamination); *Carson Harbor Villages, Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) (*Carson Harbor I*) (subjective business motivation of the responding party is not relevant; focus is on whether the response action is addressed to a threat to human health or the environment). The most sensible reading of the statute, in light of the Ninth Circuit authorities, is that costs are recoverable if they are necessary and consistent with the national contingency plan. *Carson Harbor I*, 270 F.3d 863. As long as the release of hazardous substances caused some response costs to be incurred, all costs of response that are necessary and consistent with the national contingency plan may be recovered.

The District cites numerous cases to establish that the cost of labor is recoverable under CERCLA, including *U.S. v. Chapman*, 146 F.3d 1166, 1171-72 (9th Cir. 1998) (permitting recovery of labor costs); *California v. Neville Chem. Co.*, 213 F. Supp.2d 1134, 1139-40 (C.D. Cal. 2002) (same); *Amcast Industrial Corp. v. Detrex Corp*, 822 F. Supp. 545 (N.D. Ind. 1992) (private party

labor expenses recoverable), *rev'd on other grounds*, 2 F.3d 746 (7th Cir. 1993), and *T&E Indus. Inc. v. Safety Light Corp.*, 680 F. Supp. 696 (D.N.J. 1988) (value of time spent by company president recoverable), to support its argument that such indirect costs are recoverable. Olin concedes that some courts have permitted the recovery of labor costs, but notes that other courts have not, citing *In re Hemingway Transport, Inc.*, 26 Bankr. 656, 663 (D. Mass. 1991), *aff'd* 954 F.2d 1 (1st Cir. 1992). It argues, however, that even if labor costs are potentially recoverable under CERCLA, the District is not entitled to recover such costs here because the District has not satisfied the prima facie requirements of CERCLA and those of the national contingency plan.

The weight of authority suggests that in proper case, labor costs are recoverable as a cost of response. If the labor was expended on matters addressed to the threat to human health created by the release of a hazardous substance, then the costs of such labor should be recoverable.

### 3. Whether the District's Costs were not "necessary" and therefore are not recoverable under CERCLA

CERCLA permits a private party to recover its "necessary costs of response." 42 U.S.C. §9607(a)(4)(B). The Ninth Circuit sitting e*n banc* has addressed the "necessary" prong, explaining:

> Remediation costs are recoverable under CERCLA only if "necessary." It is generally agreed that this standard requires an actual and real threat to human health or the environment exist before initiating a response action.... In determining whether response costs are "necessary," we focus not on whether a party has a business or other motive in cleaning up the property, but on whether there is a threat to human health or the environment and whether the response action is addressed to that threat.

*Carson Harbor I*, 270 F.3d at 871-72.

Olin asserts several arguments with regard to why the District's costs were not "necessary."

#### a. Threat to Human Health

First, Olin contends that the costs were not "necessary" because the District did not make a determination that the presence of perchlorate in the Llagas subbasin posed a threat to human health or the environment before incurring the costs. It also asserts that the level of perchlorate detected in the subbasin wells was within the range for drinkable water. Motion at 11. Olin asserts that State regulations permit municipalities to supply drinking water that tests up to ten times the established

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                      6

action level for a containment (*id.*) and that no well in the subbasin has tested that high.  Olin, however, has offered no legal authority that would have required the District, as opposed to the Regional Water Quality Control Board or some other person or entity, to determine that perchlorate posed a threat before response costs were incurred.  Morever, whether or not perchlorate contamination in the subbasin posed a threat to human health appears to be a dispute of material fact, and this issue is  not resolvable on summary judgment.

### b.  Duplicative Costs

Olin next contends that all of the District's claimed costs were incurred in connection with actions voluntarily taken by the District after the Regional Board took jurisdiction over the perchlorate abatement and cleanup matter and after Olin had already undertaken some of those same actions at the direct request of the Regional Board.  Motion at 11-12.  Olin contends that to the extent that the District's costs were generally "duplicative of other costs, wasteful or otherwise unnecessary to address the hazardous substances at issue," the District costs are not recoverable under CERCLA.  Motion at 12, citing *Waste Management of Alameda County, Inc. v. East Bay Reg'l Park Dist.*, 135 F. Supp.2d 1071, 1099 (N.D. Cal. 2001).  Olin asserts the following costs were duplicative:

#### 1)  Provision of Bottled Water

Olin argues that responsibility for providing bottled water had already been transitioned to Olin in 2003 and owners of wells that tested above 6 ppb for perchlorate were placed on a bottled water program under the jurisdiction of the Regional Board and operated by Olin for part of 2003 through 2005 and beyond.  In opposition, the District argues that it provided bottled water to 1500+ customers, Olin provided far less, and the transition of providing bottled water to Olin was not completed until 2005.  The material facts appear to be disputed: Olin has not established that the claimed cost corresponding to the District's provision of bottled water duplicates the costs incurred by Olin so as to have rendered the District's response unnecessary.

#### 2)  Sampling costs

In September 2001, the Regional Board requested that Olin sample the wells in the Llagas subbasin; in 2003, the District began offering free sampling services to well owners.  Olin contends

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                                                   7

that the District's sampling activities were duplicative of Olin's sampling program, which was operated at the direction of the Regional Board.  As with the category of bottled water, however, the material facts appear to be disputed and Olin has not established that the sampling performed by the District duplicated the sampling performed by Olin such that the claimed cost is duplicative.

### 3) Hotline and Public Notification Costs

Olin contends that it established a hotline system to receive and respond to calls from the community requesting sampling and bottled water.  It suggests that the District's hotline was therefore duplicative, such that the corresponding "hot line" costs are not recoverable.  Motion at 13.  The District responds that it established the hotline to be able to respond to the perchlorate concerns and cites evidence that Olin itself was referring callers to the District's hotline, especially non-English speakers because Olin's system did not have multilingual capability, and asked for the hotline to be maintained.  Opp. at 5-6.  The District also argues that it conducted numerous other public notification and participation actions.  Opp. at 6.  Olin has not established that the District's actions duplicated Olin's.  Genuine disputes of material fact preclude summary judgment on this issue.

### 4) Municipal Water Treatment (Tennant Well)

Olin asserts that the District unnecessarily incurred costs in treating the Tennant Well.  Olin contends that it established a high capacity well, the San Pedro Well, to replace the Tennant Well.  Olin also contends that continued operation of the Tennant Well could potentially exacerbate the perchlorate contamination and was opposed to its use.  Motion at 13.  The District argues that it incurred costs in treating the Tennant Well for purposes of bringing it back into operation, explaining that the City of Morgan Hill had determined that the San Pedro Well did not produce a sufficient volume of water to serve the City's customers. Opp. at 7-8, RJN at C.  Two other City wells were shut down after perchlorate was detected in 2003, and the City requested the District install an ion exchange treatment system for the Tennant Well.  District also notes that the Regional Board did not agree with Olin's concerns that operation of the Tennant Well might exacerbate the perchlorate contamination.

1    Once again, a genuine issue of material fact precludes summary judgment at this juncture.
2 Olin replaced the Tennant Well with a higher capacity well, but it appears that the City of Morgan Hill
3 still needed the Tennant Well because other wells were shut down because of perchlorate.  If the well
4 was needed, then the cost of installing an ion exchange treatment system for the Tennant Well would
5 also be a necessary response in order to address the perchlorate in that well, the cost of which is
6 conceivably recoverable.

          c. <u>Technical Support Costs</u>

8    Olin contends that the District's cost claims under the Technical Support category were
9 incurred by the District as part of its own general activities that the District undertakes in the usual
10 course of its business as a water supplier and manager, *e.g.*, maintaining identification data of its well-
11 owner customers, geologic maps of the area the District services, etc.  Motion at 15.  Olin argues that
12 there is no evidence that any of these costs were incurred to "address any threat of perchlorate."
13 Motion at 15.  Olin also argues that the District admits that it provided technical support to the
14 Regional Board in part to protect its own interest in resource protection in managing the groundwater
15 basin (water supply), and not to remedy perchlorate contamination in the Llagas sub-basin."  Motion
16 at 15.  District argues in opposition that these technical support costs were incurred to respond to
17 specific requests for technical assistance from Olin, its consultant and the Regional Board.  Opp. at 18;
18 Mohr Decl. ¶¶3-10.

19   The evidence Olin cites does not clearly support its contention.  The Mohr testimony, in
20 particular, shows that District provided many services at the request of the Regional Board.  There is a
21 genuine issue of material fact that precludes granting summary judgment on this entire cost category.

          d. <u>Coordination of Response by Affected Public Entities</u>

23   The "coordination of response" costs were incurred in an effort to collect comments from the
24 City of Morgan Hill, the City of Gilroy and the County of Santa Clara for the purpose of presenting
25 them during meetings of the Regional Board.  Olin cites to deposition testimony that the District
26 incurred these costs in connection with its effort to "make sure that [the three public entities and the
27 District] were pushing for the same interest and to avoid duplicating actions by different agencies.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY
CLAIMS—No. C-07-03756 RMW
TER          9

1  Motion at 15-16.  The District responds that it formed a "Perchlorate Working Group" to inform Olin
2  and to coordinate responses to ensure there was a timely comprehensive cleanup of the Llagas
3  subbasin.  Opp. at 8.  The District argues that if it had not formed the PWG, then Olin would have
4  been required to respond to four parties instead of responding to one group of parties.  Olin contends
5  that this lobbying effort was not "addressed to the threat of perchlorate" but was instead addressed to
6  the various interests of the members of the Perchlorate Working Group."  Reply at 12.

7  Olin's showing does not convince the court that, as a matter of law, the District cannot recover
8  this category of claimed cost.  If the perchlorate was a sufficient threat to health, which appears to be
9  genuinely disputed, then these activities appear sufficiently related to responding to that threat so as to
10 be potentially recoverable as a response cost, or at least to preclude granting summary judgment on the
11 issue.

### 4. Whether the Costs are Not Recoverable for the District's Failure to Comply with National Contingency Plan

14 Olin argues that CERCLA permits private party recovery only of costs that are consistent with
15 the NCP, citing Pakootas v. Teck Cominco Metals, Ltd, 452 F.3d 1066, 1074 n.13 (9th Cir. 2006) (in
16 private cost recovery actions under Section 9607(a), the claimant must incur response costs that are
17 both "necessary" and "consistent with the national contingency plan.") Showing compliance with the
18 NCP is an element of a prima facie case under CERCLA.

19 Olin contends that the District has not demonstrated that its claimed costs were incurred
20 "consistent" with the NCP.  Specifically, Olin identifies three areas of failure to comply with the NCP,
21 which it argues preclude the District from recovering under CERCLA.

#### a. Failure to Provide Adequate Opportunity for Meaningful Public Comment

23 First, Olin argues that the District's response actions are "removal actions" and that the District
24 did not comply with the national contingency plan's requirements for public comment on proposed
25 removal actions.  The NCP calls for an "opportunity for public comment concerning the selection of
26 the response action in question."  40 C.F.R. §300.700(c)(6).  Olin argues that failure to comply with
27 this public participation requirement is enough to conclude that a party did not substantially comply

1 with the NCP. Motion at 17, citing *City of Oakland v. Nestle USA, Inc.*, 2000 U.S. Dist. LEXIS 11326
2 at *14-15 (N.D. Cal. Aug. 9, 2000).

3   Olin contends that summary judgment in its favor is appropriate on the District's cost recovery
4 claims under CERCLA because the District did not comply with the national contingency plan. More
5 specifically, Olin contends that the District did not provide an adequate opportunity for meaningful
6 public comment, as required by the national contingency plan. Motion at 17-18. Olin points to
7 numerous public participation and comment requirements set forth in the national contingency plan
8 regulations applicable to remedial actions, specifically, 40 C.F.R. §§300.430(f)(2), (3), (5) and (6); 40
9 C.F.R. §300.700(c)(6).

10   The District, however, contends that these regulations are inapplicable, that instead its response
11 actions were "removal actions" and that more relaxed requirements under 40 C.F.R. §300.415 apply.
12 The District argues that it substantially complied with the NCP requirements for "removal actions." It
13 submits the declaration of Thomas Mohr, Senior Water Resources Specialist in the District's
14 Groundwater Management Unit, who testified that the District substantially complied with these
15 requirements and identified the various ways in which the District has been involved in public
16 comment, facilitated communications and provided information to the public about the perchlorate
17 issues and the response to it. Mohr Decl. ¶¶16-21.

18   Thus, as an initial matter, it is necessary to determine whether the District's response actions
19 constitute "remedial actions" or "removal actions" in order to determine which portions of the NCP
20 apply. The general difference between removal actions and remedial actions are that removal actions
21 are generally immediate or interim responses and remedial actions are generally permanent responses.
22 *California v. Neville Chem. Co.* 358 F.3d 661, 667 (9th Cir. 2004); 42 U.S.C. § 9601(23) and (24).
23 The distinction is significant, however, because the public participation requirements of the NCP
24 differ, depending on whether the response action is a "removal" action or a "remedial" action.

25   The District asserts that the Ninth Circuit has established a bright line test: there can be no
26 remedial action until a final remedial action plan is approved, citing *Neville Chem. Co.*, 358 F.3d at
27 667. It argues further that because the Regional Water Control Board did not issue its Cleanup and
28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY
CLAIMS—No. C-07-03756 RMW
TER                                             11

Abatement Order until December of 2007, all activity prior to that order must necessarily be a "removal action" rather than a "remedial action." The District, however, reads *Neville* too broadly. *Neville* did establish a bright line division, but did so for purposes of determining the statute of limitations, and subsequent Ninth Circuit decisions have not treated *Neville* as establishing a single bright-line rule for distinguishing between removal and remedial actions for other purposes. In *United States v. W.R. Grace & Co.*, 429 F.3d 1224 (9th Cir. 2005), the court engaged in extensive analysis of the statutory language, legislative history and case law to determine the dividing line between "removal actions" and "remedial actions" in the case before it. The court concluded that the statute was vague and the legislative history ambiguous, and that it was therefore necessary to give some deference to the agency's interpretation, including the EPA's February 2000 memo "Use of Non-Time-Critical Removal Authority in Superfund Response Actions." From this "Removal Memo" the Ninth Circuit gleaned that "time sensitivity," i.e., "the need to take relatively prompt action," [was] a key characteristic of removal actions." *Id.* at 1243. Additionally, the Ninth Circuit observed that "courts have also stressed the immediacy of a threat in deciding whether a cleanup is a removal action." *Id.* at 1244. The court further noted that "[t]he Removal Memo instead uses the term "comprehensiveness" to distinguish between the use of removal authority to conduct interim or partial response actions that are focused on immediate risk reduction as compared with a final or "comprehensive" response at the site." *Id.* at 1245.

Thus, while there is authority for the proposition that determining the nature of a party's response action as removal or remedial is a question of law that can be decided on summary judgment, *Carson Harbor II*, 287 F. Supp.2d at 1157, the court is unable to make that determination based on the present record and the parties briefing of the issues. The District seeks to recover eight categories of response costs but the parties briefs do not address the nature of each claimed cost or categorize whether the corresponding response actions fall within the realm of remedial actions or removal actions. Thus, summary judgment is not appropriate at this juncture, unless under the most lenient standard (removal actions) the court can determine that the District did not substantially comply with the applicable provisions of the national contingency plan.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                                              12

1     Assuming without deciding that the District's response actions are removal actions, and that the
2 provisions of the NCP applicable to private party removal actions apply, the next step is to determine
3 if the District has failed to meet them.

4     Olin argues that even if the more lax requirements of 40 C.F.R. §300.415 apply, the District
5 has not met even those requirements. It specifically points to provisions in §300.415(n) containing
6 requirements relating to providing a public comment period, preparing written response to significant
7 comments, preparing a formal community relationship plan and publishing a notice of availability and
8 brief description of an engineering evaluation and cost analysis. "The District has not engaged in *any*
9 of these activities with respect to the incurrence of *its own costs* incurred in connection with action
10 that *must be publicly vetted themselves*." Reply at 4, emphasis in original.

11    The District noted at oral argument that three of the four requirements identified by Olin are
12 not applicable to private party response actions, and that it has substantially complied with the fourth.
13 Specifically, section 700(c)(6) expressly exempts private parties from complying with administrative
14 record requirements. Two of the regulations identified by Olin -- providing a public comment period
15 (§415(n)(2)(ii)) and preparing written response to significant comments (§415(n)(2)(iii)) – both relate
16 to the administrative record requirements set forth in Section 820(b) and are thus not applicable to
17 private parties by the exception in section 700(c)(6). A third regulation identified by Olin –
18 publishing a notice of availability and brief description of an engineering evaluation and cost analysis
19 (§415(n)(4)(ii)) – does not apply because the subsection (n)(4) by its terms only applies where "a
20 planning period of at least six months exists prior to the initiation of the on-site removal activities."
21 The District contends that there was no such anticipated six-month planning period. Finally, with
22 regard to the fourth regulation identified by Olin, preparing a formal community relationship plan, the
23 District contends that it has substantially complied with the requirement, pointing to the Perchlorate
24 Project Communications and Outreach Plan. Grimes Dec. Ex. A.

25    40 C.F.R. §300.700(c)(3)(i) provides that a private party response action will be considered
26 "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with

27
28
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY
CLAIMS—No. C-07-03756 RMW
TER                                               13

**United States District Court**
For the Northern District of California

the applicable requirements in paragraphs (5)( and (6) of this section and results in a CERCLA-quality cleanup." Paragraph 700(c)(6) provides in relevant part as follows:

> Private parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action based on the provisions set out below ... The following provisions of this part regarding public participation are potentially applicable to private party response actions, <u>with the exception of administrative record and information repository requirements stated therein</u>: ... (ii) Section 300.415(n) (on community relations during removal actions)....

40 C.F.R §300.700(c)(c). The District's argument is persuasive, and Olin has not established, as a matter of law or as a matter of undisputed fact, that the District has failed to substantially comply with the applicable provisions of the national contingency plan. Accordingly, summary judgment cannot be granted on this basis.

        b.     <u>Failure to Maintain Proper and Adequate Documentation of Actions that Form the Basis for a Cost Recovery Claim</u>

Olin also asserts that the District failed to comply with the national contingency plan by failing to maintain "proper and adequate documentation of actions that form the basis for its cost recovery claims." Specifically, Olin argues that the NCP requires that a claimant maintain "sufficient documentation of its claimed costs." 40 C.F.R. §300.700(5)(ii); §300.160(a)(1). "Documentation is sufficient under the NCP if it includes, *inter alia*, information about the response action taken, **accurate accounting of costs incurred**, and analyses relating to the impacts and potential impacts of the response action to public health and the environment." Motion at 19, citing *id.* (emphasis in original). Olin argues that the District's claimed response costs primarily consist of its staff costs and that the staff costs "were loosely calculated based on *assumptions* made by two District employees regarding the amount of time that each and every District employee spent on work related to perchlorate contamination." Motion at 19, citing Smith Decl. Exh 3 (Hemmeter Depo at 913:4-915:18; 935:2-20).

The District argues that it used time sheets, and project codes to track the costs, citing evidence in support of its argument to demonstrate that in 2005 it then allocated these "Olin perchlorate project" time entries to the eight categories of costs it was seeking to recover. Opp. at 21.; *see* Pritchett Decl. (describing how staff hours were tracked and calculated).

The applicable regulations require documentation "sufficient to provide ... accurate accounting of ... private party costs incurred for response actions." 40 C.F.R. §300.161(a)(1). The regulations do not define or elaborate on what is meant by "accurate accounting" or "sufficient." *California v. Neville Chem. Co.*, 213 F.Supp.2d 1134, 1138 (C.D. Cal. 2002). The court in *Neville* accepted the use of employee time sheets and project codes as adequate records. The extent to which the District's use of time sheets and project codes, and their factual adequacy, thus appear to be materially disputed facts which preclude granting summary judgment in favor of Olin on this ground.

### c. Failure to Demonstrate Meaningful Consideration of Alternatives to Response Actions

Olin also contends that the District cannot recover its claimed response costs because it has not shown that it considered any meaningful alternatives to its response actions, and that "[r]esponse actions made prematurely, and without meaningful consideration of alternatives, are not considered 'consistent with the NCP.'" Motion at 20, citing *Washington State Dept. of Trans. v. Washington Nat'l Gas Co.,* 1992 U.S. Dist. LEXIS 20613 (E.D. Wash. 1992). In response, the District seeks to distinguish the cases cited by Olin on the ground that they involved "remedial" rather than "removal" actions. Opp at 21-22.

Olin has not cited any portion of the present NCP that requires consideration of alternatives, but *Pierson Sand and Gravel, Inc. v. Pierson Township*, 43 ERC (BNA) 1559 (9th Cir. 1996) (unpublished), identifies such a requirement in 40 C.F.R. §300.700(c)(6). That section provides that "private parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action ..." It is not clear, however, that considering meaningful alternatives prior to the selection of a response action is required when the response action is a removal action where the circumstances are more exigent and inherently more time-sensitive, than in the case of a remedial action. Olin's limited argument on this point is not persuasive and is accordingly insufficient to merit granting of summary judgment.

### 5. Whether the Response Actions Resulted in a CERCLA-Quality Cleanup as required by NCP

Finally, Olin argues that the District cannot recover its claimed response costs under CERCLA because its claimed response actions did not result in a "CERCLA-quality cleanup" as required by the national contingency plan. Motion at 21, citing *Carson Harbor II*, 433 F.2d at 1265, and 40 C.F.R. §300.700(c)(3)(1). Olin focuses primarily on the requirement that a "CERCLA-quality cleanup" includes a response that provides opportunity for meaningful public participation and argues that the same lack of opportunity for meaningful public participation means that the District's response actions are not consistent with the NCP for failure to result in a CERCLA-quality cleanup. The District, in turn, argues that there was sufficient public participation and comment.

The resolution of this issue rises and falls with the resolution of the public participation issue, discussed above. Summary judgment is therefore not appropriate.

### C.      Summary Judgment on Water Code Claim

Olin makes several arguments in seeking summary judgment on the District's claim under Section 13304 of the California Water Code. It first argues that the District cannot recover any of the costs it "voluntarily" incurred, because it did not first contract with the Regional Board, which it suggests is a prerequisite to recovery, citing Section 13304(b)(4). The argument is not persuasive. While the statute authorizes a Regional Board to contract with an agency or metropolitan water district to conduct investigations, it does not provide that such a contract is a necessary prerequisite to a water district bringing a claim under Section1 13304 for reimbursement of cleanup costs actually incurred.

Second, Olin argues that the Water Code does not allow the District to impose cleanup or drinking water standards that exceed those required by the Regional Water Board and that the District "is not entitled to recover any of the costs it incurred when it exceeded its authority by engaging in voluntary abatement efforts not ordered by the Regional Board." Motion at 23. The import of Olin's argument is not clear but seems dependent upon the contention that cleanup costs recoverable by a governmental agency are limited to those ordered by the Regional Board. This limitation, however, does not appear in the statute and cannot be inferred from a fair reading of the statute.

Third, Olin argues that even if the District would be entitled to recover remediation costs from Olin under the Water Code, it could only recover such costs as were reasonable and necessary, citing

Section 13304(c)(1) and (2). The District cross-references to its arguments to defeat the CERCLA claim that the District's costs were not "necessary." The facts are not undisputed, however, regarding the reasonableness and necessity of the claimed costs, and thus summary judgment cannot be granted on this ground.

Finally, Olin argues that the District cannot recover under its Water Code section 13304 claim because the District cannot show "but for" causation. Olin cites *City of Modesto Redev. Agency v. Superior Court*, 119 Cal.App.4th 28 (2004), for the proposition that a claim under Section 13304 is legally akin to, and must be construed in light of, the common law principles governing nuisance claims, including causation between the nuisance created and the damages claimed. The court has previously determined that causation is a necessary element of a claim under Section 13304. The *City of Modesto* case indicates that section 13304 should be interpreted in light of the common law of nuisance, which requires a demonstration of causation. Thus, the District may recover costs that it actually and reasonably incurred in cleaning up the perchlorate, abating the effects of the perchlorate, supervising cleanup or abatement activities, or taking other remedial action. Section 13304(c). These categories overlap to a great degree what is recoverable under CERCLA, but nevertheless, the coverage of the two statutory schemes is not identical. The court notes, but does not presently decide, for example, that the "reasonable costs actually incurred in cleaning up the waste, abating the effects of the waste, supervising cleanup or abatement activities, or taking other remedial action" that are recoverable under Section 13304 are not necessarily co-extensive with the "necessary costs of response consistent with the national contingency plan" that are recoverable under CERCLA.

Olin's motion for summary judgment on the District's claim under California Water Code Section 13304 is therefore denied.

### D. **Summary Judgment on Restitution Claim**

Olin also seeks summary judgment on the District's claim for restitution, arguing that restitution is an equitable remedy that is not available where there is in an adequate remedy at law. It argues further that the District has an adequate remedy at law through CERCLA, so the District cannot

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                   17

pursue a claim for restitution. Motion at 23-24. The District responds with citations to authority that it is allowed to plead alternative theories, even if it cannot ultimately seek duplicate recovery.

This same issue has been raised by the parties in connection with Olin's motion to strike plaintiff's jury demand. As noted in the moving and opposition papers in connection with the motion to strike, restitution has a dual nature, sometimes legal and sometimes equitable. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

Olin does not address this issue in its moving or reply papers, nor does the District address it in opposition. Accordingly, the court denies Olin's motion for summary judgment without prejudice.

### E. Summary Judgment on Claims for Declaratory Relief

Olin seeks summary judgment on the District's declaratory relief causes of action; the District opposes. The claims for declaratory relief rise and fall with the District's other substantive claims. Accordingly, to the extent those claims have survived summary judgment, it would be inappropriate to grant summary judgment on the declaratory relief claims.

### F. Summary Judgment on Claim for Punitive Damages

Finally, Olin seeks summary judgment on the District's claim for punitive damages. Olin contends that punitive damages are only appropriate where there is proof by clear and convincing evidence of malice, oppression or fraud. Motion at 24, citing Cal. Civil Code §3924(a). Olin further argues that "the District has not come forward with any evidence that Olin engaged in any conduct that would justify an award of punitive damages to the District." Motion at 24.

In opposition, the District asserts: "The Court previously ruled that malice could be found if Olin knew about the potential for harm in 1986, including the potential health risk to those consuming the water, when it discussed setting aside a liability fund, and nonetheless allowed operations to continue at the site, taking no steps to abate the threat of pollution, warn anyone, or conduct testing to measure the extent of damage." Opp. at 25. Olin further asserts that "these are the facts." *Id.*

The District's claim for punitive damages is weak and does not rise to the level of "clear and convincing evidence." Thus, the District has failed to meet its burden of pointing to specific evidence in the record from which a reasonable trier of fact could find in its favor that Olin acted with malice

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                                                 18

sufficient to justify an award of punitive damages. No reasonable trier of fact could find, based on the evidence submitted, that Olin's conduct rose to the level of malice or oppression. The evidence pointed to by the District does not rise to the level of clear and convincing evidence and, accordingly, it is appropriate to grant summary judgment on the punitive damages claim in favor of Olin.

### III.  ORDER

For the foregoing reasons, the court grants in part and denies in part defendant's motion for summary judgment as follows:

1. Defendant's motion for summary adjudication that plaintiff cannot recover its legal fees incurred in the present litigation is GRANTED.
2. Defendant's motion for summary judgment on plaintiff's CERCLA claims is DENIED.
3. Defendant's motion for summary judgment on plaintiff's California Water Code claim is DENIED.
4. Defendant's motion for summary judgment on plaintiff's restitution claim is DENIED.
5. Defendant's motion for summary judgment on plaintiff's declaratory relief claims is DENIED.
6. Defendant's motion for summary judgment on plaintiff's claim for punitive damages is GRANTED.

DATED:   8/31/09

RONALD M. WHYTE  
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Christopher Berka | chris.berka@bingham.com |
| Greg Alan Christianson | greg.christianson@bingham.com |
| Emily Jane Leahy | emily.leahy@bingham.com |
| Holly Louise Pearson | holly.pearson@bingham.com |

**Counsel for Defendants:**

| | |
|---|---|
| Randall C. Creech | Rcreech@sjlegal.com |
| Michael Eric Molland | mmolland@morganlewis.com |
| Aaron Scott Dutra | asdutra@morganlewis.com |
| Benjamin Patrick Smith | bpsmith@morganlewis.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 8/31/09        TER
                          **Chambers of Judge Whyte**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING THE DISTRICT'S REMAINING COST RECOVERY CLAIMS—No. C-07-03756 RMW
TER                                   20